**NORTHLICH, STOLLEY, INC.** [*]

v.

**The UNITED STATES.**

No. 294-62.

United States Court of Claims.
Nov. 10, 1966.

---

[*] On plaintiff's motion Northlich, Stolley Inc. was substituted as proper party plaintiff in place of Farson, Huff & Northlich, Inc.

Charles F. Wood, Louisville, Ky., for plaintiff. Laramie L. Leatherman, Louisville, Ky., attorney of record. Greenebaum, Barnett, Wood & Doll, Louisville, Ky., of counsel.

Gilbert W. Rubloff, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, WHITAKER, Senior Judge, LARAMORE, DURFEE and DAVIS, Judges.

## OPINION

PER CURIAM:

This case was referred to trial commissioner Richard Arens with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on August 30, 1965. Exceptions to the commissioner's findings of fact and recommendation for conclusions of law were filed by plaintiff and defendant requested that the court adopt both the findings of fact and recommended conclusions of law in their entirety. The case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court agrees with the trial commissioner's findings, opinion and recommended conclusions of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, not entitled to recover and the petition is dismissed.

OPINION OF COMMISSIONER**

ARENS, Commissioner:

Plaintiff, a Kentucky corporation, is an advertising agency with offices in

---

** The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

Louisville, Kentucky, and Cincinnati, Ohio. It files its Federal income tax returns on the basis of a fiscal year ending September 30, and computes its taxable income on the accrual method of accounting.

Plaintiff brings this action to recover alleged overpayment of Federal income tax and assessed interest paid as a result of disallowances made by the Commissioner of Internal Revenue in amounts claimed by plaintiff as deductible business expense in the form of officers' salaries.

The pertinent facts of the case, as supplemented by detailed material in the accompanying findings, are as follows:

Plaintiff's Federal income tax return for the fiscal year ending September 30, 1957, included as a deductible business expense, under the heading "OFFICERS' SALARIES," the following:

| | Salary | Bonus | Total |
|---|---|---|---|
| W. R. Northlich, President ............ | $28,000.08 | $10,240 | $38,240.08 |
| J. S. Huff, Senior Vice President ...... | 7,999.92 | 6,840 | 14,839.92 |
| A. Stolley, Executive Vice President .... | 18,000.00 | 5,600 | 23,600.00 |
| D. K. Smith, Secretary-Treasurer ...... | 7,999.92 | 3,400 | 11,399.92 |

Upon examination of the aforementioned return, the Commissioner of Internal Revenue disallowed an amount equal to the amount listed in the returns as bonus for W. R. Northlich, for J. S. Huff, and for D. K. Smith; and disallowed $2,856.37 of the total amount paid to A. Stolley. The ground for the disallowances was that the payments did not, to the extent of the amounts disallowed, constitute a reasonable allowance for salaries or other compensation for personal services actually rendered within the meaning of Section 162(a) (1) of the Internal Revenue Code of 1954.

Plaintiff's Federal income tax return for the fiscal year ending September 30, 1958, included as a deductible business expense, under the heading "OFFICERS' SALARIES," the following:

| | Salary | Bonus | Total |
|---|---|---|---|
| W. R. Northlich, President ............ | $26,600.10 | $5,911.12 | $32,511.22 |
| J. S. Huff, Senior Vice President ...... | 7,599.96 | 3,522.22 | 11,122.18 |
| A. Stolley, Executive Vice President .... | 17,100.00 | 2,955.55 | 20,055.55 |
| D. K. Smith, Secretary-Treasurer ...... | 7,599.96 | 1,761.11 | 9,361.07 |

Upon examination of the aforementioned return, the Commissioner of Internal Revenue disallowed an amount equal to the amount listed in the return as bonus for W. R. Northlich, for J. S. Huff, and for D. K. Smith; and disallowed $1,561.30 of the total amount paid to A. Stolley. The ground for the disallowances was the same as the ground for the disallowances in plaintiff's income tax return for the fiscal year ending September 30, 1957.

Prior to 1949, there had been for some 15 years a partnership advertising agency known as Farson and Huff in Louisville, Kentucky, in which Mr. J. S. Huff and his wife, Margaret Huff, each held a one-third interest, and in which Miss

Dorothy K. Smith held a one-third interest. This agency is hereinafter usually referred to as the Louisville Partnership.[1]

By 1949, the Louisville Partnership had accumulated a substantial amount of capital in excess of its business needs in the Louisville area. As a result, the partners were interested in investing some of the excess funds in an advertising agency located in another city.

Prior to 1949, Mr. W. R. Northlich had been engaged for over 20 years in the advertising and related businesses. In 1948, he was employed as an executive in a Cincinnati, Ohio, advertising agency which, because of the loss of its major client, caused Mr. Northlich to look for a new connection. At the time, several firms, whose accounts he had been servicing in the Cincinnati area, indicated to him that they would transfer their billings,[2] aggregating more than $300,000 annually, to him if he should make satisfactory arrangements with another advertising concern. Because Mr. Northlich did not have the relatively large amount of capital needed to finance an advertising agency, he discussed various arrangements with prospective business associates, including the Louisville Partnership, with capital to invest in an advertising agency. At that time, the Louisville Partnership had no clients in Cincinnati.

On February 7, 1949, a partnership advertising agency known as Farson, Huff and Northlich, with the principal office and place of business in Cincinnati, Ohio, was formed by the Louisville Partnership and W. R. Northlich. This partnership is hereinafter usually referred to as the Cincinnati Partnership.

The partnership agreement, though not formally executed, was reduced to writing and adhered to at all times. The agreement provided that:

(1) The Louisville Partnership was to advance and loan to the Cincinnati Partnership "the necessary funds to pay for all operating costs and expenses, including equipment, alterations and the salaries of all personnel employed" in the Cincinnati office.

(2) W. R. Northlich was to contribute the interest which he had in certain advertising accounts and to devote his entire time to the Cincinnati Partnership. He was to receive a salary of $16,000 per year which was to be guaranteed for the first year by the Louisville Partnership; thereafter, his salary was to remain constant until the partners entered into some other agreement.

(3) The Louisville Partnership was to "devote as much time as may be agreed upon between the partners to advancing and rendering profitable the business of" the Cincinnati Partnership.

(4) The Louisville Partnership was to have two-thirds interest and W. R. Northlich was to have one-third interest in the Cincinnati Partnership, and the profits and losses were to be allocated accordingly.

After its formation, the Cincinnati Partnership was operated in accordance with the partnership agreement. Mr. Northlich directed the day-to-day operations of the business but Miss Dorothy K. Smith handled the fiscal and accounting affairs of the Cincinnati Partnership from Louisville (110 miles from Cincinnati), where she was assisted by clerical and accounting employees who were paid by both the Louisville Partnership and the Cincinnati Partnership in accordance with the amount of time devoted to the respective affairs of the two partnerships. These affairs included the bill-

---

1. The Louisville Partnership, Farson and Huff, later became known as Farson, Huff and Northlich, although Northlich never acquired any interest in it or rendered services to it.

2. The term "billings," as used in the advertising industry, means the invoice charges rendered to a client by an advertising agency. The publisher or broadcaster that carries the advertisement gives the advertising agency a discount (generally 15 percent) off the published rate. The agency charges the client the published rate.

ings, accounts receivable, and finances between the Louisville Partnership and the Cincinnati Partnership. Mr. Huff participated on occasions with Mr. Northlich in discussions with prospective clients. Both Mr. Huff and Miss Smith conferred either by person or by telephone frequently with Mr. Northlich concerning the operations of the Cincinnati Partnership and generally assisted in its development. The record does not reveal any time allocation by Mr. Huff and Miss Smith as between the Louisville Partnership and the Cincinnati Partnership.

The progressive increase in the prosperity of the Cincinnati Partnership was evidenced by the rise in gross receipts from approximately $327,000 in 1949 to over $1,500,000 in 1954; and by the increase in net profit from a loss of approximately $2,500 in 1949 to a net profit of about $46,000 in 1954. Subsequent to the first year, 25 percent of the profits were credited to the two capital accounts of the partners. Mr. Northlich received one-third of the amount so credited and the Louisville Partnership received the remaining two-thirds.

Mr. Northlich was the only member of the Cincinnati Partnership who received a salary. His salary, while the partnership was in operation, was as follows:

| Year: | Salary |
|---|---|
| 1949 (February through December) | $14,205.02 |
| 1950 | 15,999.84 |
| 1951 | 17,666.64 |
| 1952 | 18,000.00 |
| 1953 | 23,000.00 |
| 1954 | 24,000.00 |
| 1955 (January through October) | 20,000.00 |

The number of employees of the Cincinnati Partnership increased, as did their aggregate salaries. The total annual salaries paid to the employees (other than Mr. Northlich) were as follows:

| Year: | Salary Paid All Employees Other Than Northlich |
|---|---|
| 1949 (11 mos.) | $ 17,319.63 |
| 1950 | 43,388.20 |
| 1951 | 72,999.70 |
| 1952 | 106,184.36 |
| 1953 | 153,634.94 |
| 1954 | 162,484.88 |
| 1955 (10 mos.) | 132,894.54 |

In 1951, the Cincinnati Partnership inaugurated a program of year-end bonuses for its employees. No bonus payments were made to the partners. The bonus payments made to all employees of the Cincinnati Partnership were as follows:

| Year: | Bonus |
|---|---|
| 1951 | $2,764.50 |
| 1952 | None (Wage stabilization) |
| 1953 | 5,100.00 |
| 1954 | 7,075.00 |
| 1955 (10 mos.) | 4,045.00 |

In 1955, the principals of the Cincinnati Partnership decided to incorporate the business under the name of Farson, Huff & Northlich, Inc. (usually referred to hereafter as plaintiff),[3] which had an authorized capitalization of $33,000, consisting of 30,000 shares of common stock at $1.00 par, and 30 shares of 5 percent preferred stock at $100 par. This stock was initially distributed as follows:[4]

Northlich ............10,500 common
 10 preferred
Huff ............... 5,500 common
 10 preferred
Smith ............... 5,500 common
 10 preferred

---

3. The incorporation was accomplished on June 30, 1955, by amendments to the Articles of Incorporation of the Alexander-Stewart Company, Inc., a Kentucky general advertising and merchandising service which had been incorporated in 1954.

4. Mrs. Margaret Huff, who held a one-third interest in the Louisville Partnership, did not acquire any interest in plaintiff.

The remaining 8,500 shares of common stock were not distributed until February 1957, when 3,000 shares were sold to Mr. Alexander Stolley who, during fiscal years 1957 and 1958, was plaintiff's executive vice president and account supervisor.

The incorporation of the business did not materially alter the scope or nature of the participation by Mr. Northlich, Mr. Huff, and Miss Smith. The Louisville Partnership continued to lend and advance funds to plaintiff in the same manner as it had provided funds to the Cincinnati Partnership; and the account work of plaintiff was carried on at the offices of the Louisville Partnership under the same general arrangements which were in existence during the period of the Cincinnati Partnership.

 In considering the legality of the disallowances made by the Commissioner of Internal Revenue in the amounts (salary plus bonus) paid by plaintiff to its officers, we start with the propositions that the determinations made by the Commissioner are presumed to be correct and that the burden is on the taxpayer to show by a fair preponderance of the evidence that the total amounts paid for salaries or other compensation were reasonable within the meaning of the Internal Revenue Code.[5] Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L. Ed. 623 (1935); Samuel Heath Co. v. United States, 2 F.Supp. 637, 77 Ct.Cl. 219 (1933); Nowland v. Commissioner of Internal Revenue, 4 Cir., 244 F.2d 450 (1957). Plaintiff relies primarily in this court on the following six points which it contends supports its position that the

---

5. The Internal Revenue Code (26 U.S.C. § 162, 1964 edition) reads in pertinent part:

"(a) In general—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *"

Relevant portions of the Internal Revenue Regulations are:

"§ 1.162–7. Compensation for personal services.

"(a) There may be included among the ordinary and necessary expenses paid or incurred in carrying on any trade or business a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services.

"(b) the test set forth in paragraph (a) of this section and its practical application may be further stated and illustrated as follows:

"(1) Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case the salaries are in excess of those ordinarily paid for similar services and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it would seem likely that the salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock. An ostensible salary may be in part payment for property. This may occur, for example, where a partnership sells out to a corporation, the former partners agreeing to continue in the service of the corporation. In such a case it may be found that the salaries of the former partners are not merely for services, but in part constitute payment for the transfer of their business.

* * * * *

"§ 1.162–9. Bonuses to employees.

"Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered. It is immaterial whether such bonuses are paid in cash or in kind or partly in cash and partly in kind. Donations made to employees and others, which do not have in them the element of compensation or which are in excess of reasonable compensation for services, are not deductible from gross income."

total amounts (salary plus bonus) which it paid its officers were reasonable:

(1) No family relationship existed between any of the officers;

(2) All of the officers actually performed services for plaintiff;

(3) Plaintiff paid bonuses to all its employees and not just to the officers;

(4) Plaintiff paid dividends on its common stock;

(5) Plaintiff paid dividends on its preferred stock; and

(6) Plaintiff paid substantial Federal income taxes.

■ Notwithstanding the factual basis for each of plaintiff's six points, it is clear from the record before the court that plaintiff has not discharged its burden. Where, as in the case at bar, the officers to whom the compensation was paid, even though not related, are also in complete control of the corporation's affairs, the situation calls for close scrutiny to determine whether so-called compensation is not in reality a distribution of profits in a manner calculated to avoid payment of income and excess profits taxes. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929); Nowland v. Commissioner of Internal Revenue, supra.

An examination of the charts of stock ownership and of the bonus payments reveals that the total bonus payments to Mr. Huff and Miss Smith are exactly equal to the bonus payment to Mr. Northlich during the fiscal years 1956 and 1957, and are approximately equal to the bonus payment to Mr. Northlich during fiscal year 1958. During these years, Mr. Northlich's stockholdings were approximately equal to the combined stockholdings of Mr. Huff and Miss Smith.

In 1957, when Mr. Stolley acquired 3,000 shares of plaintiff's stock, his bonus, which was $3,000 in 1956, was increased to $5,600 in 1957.

■ Plaintiff employed approximately 30 people during fiscal years 1956 through 1958. Although about two-thirds of the amount of the total annual salary was paid to non-stockholding employees, the stockholding employees received $26,080 of the $32,025 bonus payments in 1957, and received $14,149 of the $15,849 bonus payments in 1958. The bonus payments to the stockholding employees ranged from a low of 22 percent to a high of 85 percent of their basic salary. However, the bonus payments to the non-stockholding employees averaged only 4 percent of their salary. From the entire record, it appears that the bonus payments to plaintiff's officers were more in the nature of dividends than payments for services rendered, even though plaintiff's officers repeatedly asserted at the trial that stockholding was never used by the Board of Directors as a basis for fixing a bonus.

■ In Irby Construction Co. v. United States, 290 F.2d 824, 154 Ct.Cl. 342 (1961), this court pointed out that even a payment that is reasonable is not deductible if it was actually a distribution of earnings as contrasted with compensation for services rendered, and that a bonus-type contract which is reasonable with a non-stockholder employee may be unreasonable if made with a large stockholder, since the incentive of the bonus would presumably not be needed to call forth the stockholder's best efforts.

■ The record is virtually barren, moreover, of evidence of services performed by and salaries paid to other individuals in the same or a comparable business. At the trial, Mr. Northlich testified that, in fixing the compensation of its personnel, plaintiff watched very carefully the compensation paid to all categories of personnel as reflected in published surveys. This testimony of plaintiff's president cannot, standing alone, be deemed sufficient to prove the reasonableness of the total compensation received by the officers of plaintiff, even though defendant offered no witnesses at the trial. See R. J. Reynolds Tobacco Co. v. United States, 149 F.Supp. 889, 138 Ct.Cl. 1, cert. denied, 355 U.S. 893, 78 S.Ct. 266, 2 L.Ed.2d 191 (1957).

It follows then that plaintiff is not entitled to recover and its petition must be dismissed.