**CHARLES McCANDLESS TILE SERVICE**

v.

**The UNITED STATES.**

**No. 30–67**

United States Court of Claims.
March 20, 1970.

John A. Harvey, III, Santa Ana, Cal., for plaintiff.

Joseph Kovner, Washington, L. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant, Philip R. Miller and John J. Kilgariff, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

---

## OPINION*

LARAMORE, Judge.

This is an action to recover Federal income taxes paid by plaintiff for the fiscal years ended June 30, 1963, 1964 and 1965. The issue presented involves the extent to which amounts paid by plaintiff during the years in question to its two principal officer-stockholders are deductible for tax purposes as reasonable compensation. The relevant facts, set forth at length in succeeding findings, are recited here in summary fashion.

Plaintiff, Charles McCandless Tile Service, is a corporation organized, existing, and doing business under the laws of the State of California. Its business is that of ceramic tile contracting, and its primary area of activity is southern California. Plaintiff's present business is the outgrowth of a sole proprietorship owned and operated for many years by Charles S. McCandless (hereinafter frequently referred to as "Charles S.") under the name of Charles McCandless Tile Service.

In 1955, Charles S.'s son, Charles L. McCandless (hereinafter frequently referred to as "Charles L.") went to work full time in his father's business. During the years 1955 through 1958, Charles S. turned over a continually increasing amount of contracting responsibility to his son. In 1959, Charles S. and his son, Charles L., formed a partnership to succeed to the business of the former proprietorship. On January 2 of that year, Charles L. purchased his interest in the partnership from his father for the sum of $28,972.17, a figure equal to one-half of the book value of the business at that time. The business had been expanding for a number of years.

In June 1960, the plaintiff corporation was formed, and the business of the partnership, along with part of its assets, was transferred to the new corpo-

---

* We are indebted to Trial Commissioner Lloyd Fletcher for his findings of fact, which have been adopted in their entirety, and for his recommended opinion, though we have substituted our own in reaching a different result.

ration. Charles S. received 50 percent of the stock of the new corporation, while Charles L. received the other 50 percent. The business operations of plaintiff subsequent to its incorporation and during the years in question, described with great detail in the findings below, were highly efficient and extremely profitable.

During the fiscal years in suit (1963, 1964, and 1965), all or nearly all of plaintiff's stock was owned directly or indirectly by Charles S. and Charles L. McCandless. During the same period, the two officer-director-shareholders (Charles S. and Charles L.) determined the amount of compensation paid to themselves. For fiscal years 1963, 1964, and 1965, respectively, father and son each received $58,500, $79,200, and $86,000 in salaries from plaintiff. Plaintiff, on its tax return for each of these years deducted the amounts paid as reasonable compensation. The Commissioner of Internal Revenue disallowed, as in excess of reasonable compensation, a portion [1] of plaintiff's deduction for each year. Plaintiff paid the assessed deficiencies resulting from the disallowances and, having filed a timely claim for refund, now seeks recovery here.

Section 162(a) (1) of the Internal Revenue Code of 1954 [2] provides, in pertinent part:

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;
* * *.

The guidelines for deductibility are further delineated in Treas.Reg. section 1.-162–7(a) (1954) which imparts, in conformance with the underlying statute, that:

* * * The test of deductibility in the case of compensation payments is whether they are [1] *reasonable* and [2] are in fact payments *purely for services.* [Emphasis supplied.]

*See also*, R. J. Reynolds Tobacco Co. v. United States, 138 Ct.Cl. 1, 149 F.Supp. 889 (1957), cert. denied, 355 U.S. 893, 78 S.Ct. 266, 2 L.Ed.2d 191 (1957).

■ It is well settled that whether compensation is reasonable for tax-deduction purposes is a question of fact which, there being no universal rule to determine the answer, must be decided on the basis of a review of all the facts in each particular case. *See,* Irby Construction Co. v. United States, 154 Ct.Cl. 342, 290 F.2d 824 (1961); Bringwald, Inc. v. United States, 167 Ct.Cl. 341, 334 F.2d 639 (1964); Jones Brothers Bakery, Inc. v. United States, 188 Ct.Cl. 226, 411 F.2d 1282 (1969); Stiening v. Commissioner of Internal Revenue, 147 F.2d 204 (3d Cir.1945). This court, in Irby Construction Co. v. United States, *supra,* described the issue under consideration there, now here, in the following language, 167 Ct.Cl. at page 346, 290 F.2d at 826:

The inquiry as to the reasonableness of compensation in a given instance is not without some guides. At various times courts have looked to such things as the amounts paid by similar enterprises for services of a like character; the type and extent of services rendered by the employee; the scarcity of qualified employees for the position; the prior earning capacity of the employee; the peculiar characteristics of the taxpayer's business, and the general economic condi-

---

1. The total amounts so disallowed by the Internal Revenue Service were as follows: $15,000 of the $117,000 purported compensation paid for 1963; $58,400 of the $158,400 purported compensation paid for 1964; and $75,000 of the $172,000 pur-

ported compensation paid for 1965. *See also* finding 37, *infra.*

2. All citations to Code sections hereinafter are, unless otherwise indicated, in reference to the Internal Revenue Code of 1954.

tions of the period. [Citation omitted.] * * *.

See also, 2 P–H 1970 FED. TAXES ¶ 11,611 at 11,303; Mertens, Law of Federal Income Taxation, section 25.69 (1966).

 It is also well established that the burden of proof in each case regarding the extent to which purported salary payments constitute reasonable compensation for services performed rests upon the taxpayer. See Griffin & Co. v. United States, 182 Ct.Cl. 436, 389 F.2d 802 (1968); Northlich, Stolley Inc. v. United States, 177 Ct.Cl. 435, 368 F.2d 272 (1966); Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929), aff'g 63 Ct.Cl. 405 (1927); Shield Co., Inc., 2 T.C. 763 (1943).

There can be little doubt on the record here that plaintiff's impressive net profit showing during the years in question has been due in large measure to the long experience, outstanding executive abilities, and hard work of Charles S. and Charles L. McCandless. The evidence is persuasive, moreover, that it would be extremely difficult for plaintiff to replace these two officers within any reasonable period of time. In short, the McCandlesses have placed a critical role in, and are largely responsible for, plaintiff's extremely successful operations.

The record further reveals that the payments received by the McCandlesses, when compared with nationwide averages of officers' compensation for special trade contractors in plaintiff's asset category, where a lesser percentage of net profits than the national average for such special trade contractors. Direct comparison of plaintiff to the "comparable" company suggested by defendant, sheds little light on the question of reasonable compensation. In-

deed, the difference in certain operational aspects such as method of crew coordination and quantity of personnel, and the great disparity in net-profit-making ability, strongly support the conclusion that the Hawthorne Tile Company is *not* a "comparable" company for tax-aspect comparison purposes. If a comparison of the two companies indicated anything, however, it is that the McCandlesses *were* entitled to compensation substantially in excess of that received by their Hawthorne counterpart. Accordingly, after examining the record in its entirety, with particular emphasis upon the elements discussed above, we consider the compensation paid by plaintiff to the McCandlesses during the pertinent period, in and of itself, to have been within the realm of reasonableness.

 Even a payment deemed reasonable, however, is not deductible to the extent that it is in reality a distribution of corporate earnings and not compensation for services rendered. See, Irby Construction Co. v. United States, *supra*; Northlich, Stolley Inc. v. United States, *supra*; Klamath Medical Service Bureau v. Commissioner of Internal Revenue, 29 T.C. 339 (1957), aff'd, 261 F.2d 842 (9th Cir. 1958). Close scrutiny of payments is particularly warranted where, as in the instant case, a closely held corporation and its officer-stockholders are involved. See, Treas.Reg. section 1.162–7(b) (1) (1954); Bringwald, Inc. v. United States, *supra*. The operative facts here reveal, in this regard, that as of June 30, 1965, plaintiff had neither declared nor paid dividends to its shareholders in any amount since its formation in 1960.[3] During each of the years in controversy, however, approximately 50 percent of net profits (before salaries and Federal income tax) was paid to the McCandlesses as compensation. We think it clear that any return on equity capital is so conspicu-

---

3. While plaintiff's retention of net profits (after salaries and Federal income taxes) during the years in issue appears to reflect conservative business policies of building up operating capital reserves, only a small percentage of such retained profits was actually utilized for capital expenditures. See findings 25, 27, and 36, and findings footnote 10, *infra*.

ous by its absence as to indicate, given all the facts, that the purported compensation payments necessarily contained a distribution of corporate earnings within. *See,* Twin City Tile & Marble Co. v. Commissioner of Internal Revenue 6 B. T.A. 1238 (1927), aff'd, 32 F.2d 229 (8th Cir. 1929) ; Jacksonville Paper Co., 13 T.C.M. 728 (1954) ; Botany Worsted Mills v. United States, *supra.*

 It is not without great difficulty that we must determine what portion of the purported compensation payments received by the McCandlesses was in reality a disguised dividend. No precise formula with which to strike a balance between compensation and investment-return commends itself to us. Nevertheless, as surely as the McCandlesses contributed substantially in their employee-roles to plaintiff's success, it is equally clear that they were responsible also in their stockholder-roles (*i. e.,* supplying risk capital, assuming corporate obligations, and participating in corporate decisions) for that success.

Implicit in our earlier discussion of reasonable compensation is the attitude that a corporation's highly efficient operation and its clearly demonstrated profit-making ability justify substantial compensation to the officers responsible therefor. As such performance justifies substantial compensation, we are of the further view that it also justifies a substantial investment return. Perhaps this is especially true with respect to a closely held corporation where the opportunity to distribute corporate earnings as compensation is most readily available and, as here, compensation is in fact in proportion to the stockholdings of the principal stockholders. Accordingly, in the case at hand, an examination of the entire record leads us to conclude that a return on equity capital equal to 15 percent of net profits (before salaries and Federal income tax) would have been

reasonable and justified in each of the years under review. We hold, therefore, that the purported compensation payments involved in this suit were actually distributions of corporate earnings to the extent described immediately above, and to that extent such payments were not properly deductible under section 162(a) (1).[4]

In accordance with the above, plaintiff is entitled to recover in the present action for fiscal years 1964 and 1965 only, together with interest as provided by law, and judgment is entered for plaintiff, with the amount of recovery to be determined in subsequent proceedings under Rule 131(c).

---

4. The breakdown of total purported compensation payments for each of the disputed years into properly deductible salaries and corporate distributions of earnings, respectively, is as follows: $80,628 and $36,372 for 1963; $116,363 and $42,037 for 1964; and $125,235 and $46,765 for 1965. *See also* finding 44, *infra.*