SOUTHWESTERN RUBBER & PACKING COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Southwestern Rubber & Packing Co. v. Commissioner
Docket No. 1963-75.
United States Tax Court
T.C. Memo 1977-173; 1977 Tax Ct. Memo LEXIS 267; 36 T.C.M. (CCH) 716; T.C.M. (RIA) 770173; June 8, 1977, Filed John T. McKellar, for the petitioner. James N. Mullen, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioner's Federal corporate income tax: Fiscal Year Ending
Deficiency
September 30, 1971
$25,643
September 30, 1972
24,469
The sole issue for decision is whether amounts which petitioner paid its principal officers as compensation were reasonable under section 162. [1]
FINDINGS OF FACT The parties submitted this case under Rule 122, *268 Tax Court Rules of Practice and Procedure. All of the facts have been stipulated and are so found. Those necessary to an understanding of the case are as follows: At the time petitioner filed its petition, its principal offices were in Houston, Texas. Petitioner is a Texas corporation engaged in the business of marketing fabricated metal hose assemblies, industrial rubber supplies, and gaskets, primarily to companies involved in the petrochemical industry. Many of petitioner's products are used for transporting poisonous or dangerous organic substances. Due to petitioner's good reputation in its field of work, industrial customers come to petitioner for advice on what products to use for a particular job. They frequently ask petitioner to design a hose or other component to contain the product to be transported. During the years in issue, petitioner had over 850 customers, including such corporations as Texaco, DuPont, Union Carbide, Gulf Oil, Exxon, Monsanto, Celanese Corp. of America, Alcoa, Reynolds Metals, and Diamond Shamrock. Petitioner was incorporated in 1956 by J.D. Ray and Jack W. Nickelson. Ray and Nickelson entered the rubber and packing business as salesmen *269 in 1946. Each has an undergraduate degree but neither is an engineer. From the date of incorporation to the present, petitioner's 20,000 shares of stock were held as follows: Number
Percentage
of Shares
of Ownership
J.D. Ray
9,980
49.9%
Mrs. J.D. Ray
20
.1%
Jack W. Nickelson
9,980
49.9%
Mrs. Jack W. Nickelson
20
.1%
Since incorporation Ray and Nickelson have alternated each year as petitioner's president and vice president. Ray and Nickelson devote all of their working hours to petitioner's business, dividing their time between administration and sales. The two men are responsible for petitioner's day-to-day operations, including inventory control and labor negotiations, as well as its long-range direction. They also service their own sales accounts, accounts they first developed many years before the years in issue. Ray's major sales accounts were: Diamond Shamrock; Champion International Paper Company; Atlantic Richfield; Gulf Oil at Cedar Bayou, Texas; and Ethyl Corp. of America. Nickelson's major sales accounts were: Texaco; Union Carbide; Stauffer Chemical; Reed Tool Company; and Schlumberger Well Surveying Co. During the *270 years in issue, petitioner employed four salesmen. [2] The sole duty of these salesmen was to call on their respective accounts to make sales. Each salesman was assigned a particular area to service. Ray and Nickelson occasionally helped these salesmen answer technical questions or close contracts. Even if Ray or Nickelson aided a salesman to make a sale, the salesman received full credit for the sale. Petitioner has compiled a very successful sales and earnings record. The following is a record of sales, gross profit, officers' salaries and taxable income, as claimed on petitioner's income tax returns: Fiscal Year
Gross
Officer
Taxable Ending 9/30
Sales
Profit
Salaries
Income
1959
$ 765,314
$ 267,677
$ 78,000
$ 47,679
1960
671,497
267,528
83,700
43,390
1961
665,306
250,991
85,800
15,167
1962
702,749
266,816
85,800
11,363
1963
721,444
291,165
85,800
34,437
1964
793,879
311,457
85,800
48,105
1965
815,474
336,809
89,600
69,843
1966
917,471
521,909
111,000
72,573
1967
1,076,093
453,883
121,000
76,086
1968
1,203,263
507,050
131,000
93,639
1969
1,489,497
611,291
150,500
83,285
1970
1,845,234
745,026
174,000
89,487
1971
2,025,018
826,123
203,000
106,699
1972
2,248,553
889,362
224,750
70,756
*271 Despite this success, petitioner has never paid any dividends. For the fiscal year ending September 20, 1971, petitioner had retained earnings of $280,227.71. At the end of its next fiscal year, its retained earnings had increased to $294,969.72. Petitioner pays sizable bonuses to its employees. Every employee, except Ray and Nickelson, receives a bonus equivalent to two weeks salary twice a year. In addition, shop employees receive a bonus of one month's salary at the end of petitioner's fiscal year. At that time the bookkeeper and the receptionist receive a bonus of two to three month's salary. Ray and Nickelson determined their own bonuses after the end of the fiscal year and after the other bonuses had been paid. They did not use a formula but determined the amount of their bonuses on the basis of petitioner's earnings, the sales they had generated, and the extent of their administrative duties. In addition to their bonuses, Ray and Nickelson also received a monthly salary. They each received exactly the same compensation. The compensation of each was as follows: Fiscal Year Ended 9/30
Salary
Bonus
Total
1968
$45,500
$20,000
$65,500
1969
50,250
25,000
75,250
1970
52,000
35,000
87,000
1971
61,500
40,000
101,500
1972
67,375
45,000
112,375
*272 During the same years, Ray and Nickelson were responsible for the following amounts of gross sales: As a percentage Fiscal Year
of petitioner's Ended 9/30
Amount
total gross sales
1968
$ 769,446.91
64%
1969
925,101.52
62%
1970
1,121,375.51
60%
1971
1,237,063.81
61%
1972
1,311,384.37
58%
Petitioner's four salesmen received no monthly salary. Instead they received a commission of 40% of gross profit on each sale they made. The following represents the total gross sales generated by the salesmen, their commissions and bonuses, and their gross sales as a percentage of total gross sales: As a Percen- Fiscal Year
tage of Total Ended 9/30
Gross Sales
Commission
Bonus
Total
Gross Sales
1968
$433,815.98
$ 58,198.33
$4,338.15
$62,536.48
36%
1969
564,396.26
78,511.26
5,643.96
84,155.22
38%
1970
737,353.01
108,055.44
7,373.52
115,428.96
40%
1971
802,846.90
101,866.70
8,028.47
109,895.17
39%
1972
937,169.15
112,070.70
9,371.69
121,442.39
42%
On its corporate income tax return for the fiscal year ending September 30, 1971, petitioner deducted $101,500 as compensation *273 for Ray and a similar amount for Nickelson. On its return for the fiscal year ending September 30, 1972, petitioner deducted $112,375 as compensation for Ray and a similar amount for Nickelson. Respondent determined that the reasonable salary for each individual was $79,222.55 for fiscal 1971 and $90,212.20 for fiscal 1972. In addition respondent decreased petitioner's profit sharing expenses by $6,969 and $6,650 for the fiscal years 1971 and 1972, respectively, to reflect the 15 percent of compensation limitation per year on deductible contributions to a profit sharing plan. OPINION Petitioner paid each of its two principal officers, J.D. Ray and Jack W. Nickelson, compensation of $101,500, for its fiscal year ending September 30, 1971, and $112,375 for its fiscal year ending September 30, 1972, plus contributions of 15 percent of these amounts to a profitsharing plan. Petitioner claims that these payments represented reasonable compensation for the services Ray and Nickelson rendered and that it is entitled to deduct these amounts under section 162. [3] Respondent contends that only $79,222.55 for each of Ray and Nickelson for fiscal 1971 and $90,212.02 for each in fiscal *274 1972, plus the 15 percent profit-sharing plan contribution which these lower figures would produce, represents reasonable compensation. Whether amounts paid to shareholder-employees of a closely held corporation constitute reasonable compensation is a question of fact, and the burden of proving the reasonableness of the compensation is on the taxpayer. Botany Worsted Mills v. United States,278 U.S. 282, 289-290 (1929); Miller Box, Inc. v. United States,488 F. 2d 695, 700 (5th Cir. 1974), cert. denied 417 U.S. 945 (1974); Dielectric Materials Co. v. Commissioner,57 T.C. 587, 591 (1972). Because the recipients of the contested compensation were the major shareholders and the principal executive officers of petitioner, we have closely scrutinized the surrounding facts and circumstances. Northlich, Stolley, Inc. v. United States,368 F. 2d 272, 278 (Ct. Cl. 1966); Paula Construction Co. v. Commissioner,58 T.C. 1055, 1058 (1972), *275 affd. per curiam 474 F. 2d 1345 (5th Cir. 1973). We conclude that petitioner has failed to carry its burden of proof in this case, and therefore sustain respondent's determination. All of the evidence has been stipulated. Petitioner did not present any expert testimony. Petitioner also did not present any evidence relating to the amount of compensation which "would ordinarily be paid for like services by like enterprises under like circumstances." Section 1.162-7 (b)(3), Income Tax Regs.
Although petitioner has been very successful, it has never paid a dividend. Petitioner's success is reflected far more in increases in its officers' compensation than in taxable income. For fiscal 1959 through fiscal 1972, petitioner's sales tripled, gross profit tripled and officers' compensation tripled, but taxable income increased only one and one-half times. One could not describe the fixing of officers' compensation as "pursuant to a free bargain" within the meaning of section 1.162-7(b)(2), Income Tax Regs. Ray and Nickelson determined their own bonuses after the end of the fiscal year and after the other employees' bonuses had been paid. A general pattern was followed *276 under which the bulk of pre-salary net profits was paid out as salary. There is no evidence this was not done to minimize corporate tax. The officers did not use a formula but determined the amount of their bonuses by hindsight on the basis of petitioner's earnings, the sales they had generated and the extent of their administrative duties. Officers' salaries, bonuses and profit-sharing contributions exceeded 10 percent of gross sales in the fiscal years in issue and were far in excess of net profits after salaries. There is no evidence that petitioner fixed Ray's and Nickelson's compensation pursuant to a good faith attempt to arrive at reasonable compensation.Rather it appears that petitioner has failed to prove it was not attempting to use officers' compensation as a means of distributing earnings of the corporation. The principal facts favoring petitioner are its overall generous bonus policy and the fact that the total compensation it paid the four non-stockholder salesmen was about the same it paid each of its two stockholding employees. This alone is, on the facts, insufficient evidence on which to reverse respondent's determination that the officers' compensation was more *277 than reasonable. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Petitioner also had numerous other employees.↩
3. Section 162(a)(1) permits a taxpayer to deduct as an ordinary and necessary business expense "a reasonable allowance for salaries or other compensation for personal services actually rendered."↩