**BUILDERS CENTER, INC.**

v.

**UNITED STATES of America.**

**Civ. A. No. 80–785–A.**

United States District Court,
M.D. Louisiana.

July 12, 1983.

Leon Gary, Jr., Gary & Field, Baton Rouge, La., for plaintiff.

Stanford O. Bardwell, U.S. Atty., Baton Rouge, La., Steven Gremminger, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

### Findings of Fact

The parties have stipulated the following facts:

1. Builders Center, Inc. is a Louisiana corporation domiciled in East Baton Rouge Parish, and was incorporated in 1956.

2. Builders Center, Inc. timely filed its federal income tax return for its fiscal year ending October 31, 1976 and paid the taxes shown thereon to be due.

3. During FYE 7610 or within 2½ months thereafter, the Company paid $136,000.00 in total compensation to Lamar N. Coxe and $141,000.00 in total compensation to Sidney E. Coxe.

4. Subsequently, defendant, through its agents, assessed additional income taxes for that year in the amount of $45,501.00 (plus interest).

5. The Company has paid to defendant the sum of $45,501.00 (plus interest) in satisfaction of the assessment referred to above.

6. On June 20, 1980, the Company filed a timely claim for refund of the above taxes, asserting that the tax had been illegally and erroneously assessed and collected.

7. The Company's claim for refund was disallowed by defendant on July 21, 1980.

8. In 1976, the Company had issued 2,574 shares and the shareholders of the Company were the following parties holding the number of shares set forth opposite their respective names:

| | | | |
|---|---|---|---|
| Lamar N. Coxe | — | 458 | shares |
| Sidney E. Coxe | — | 1,287 | shares |
| Lamar N. Coxe, Jr. | — | 304.5 | shares |
| William E. Coxe | — | 273.5 | shares |
| Sherri D. Coxe | — | 30 | shares |
| Glenda L. Coxe | — | 30 | shares |
| Carey E. Coxe | — | 30 | shares |
| Barbara A. Coxe | — | 47 | shares |
| William E. Coxe, Jr. | — | 47 | shares |
| Charlotte B. Coxe | — | 47 | shares |
| Martha L. Coxe | — | 20 | shares |

9. Sherri, Glenda and Carey Coxe are the children of Lamar N. Coxe, Jr. and the grandchildren of Lamar N. Coxe, Sr.

10. Martha L. Coxe is the former wife of Lamar N. Coxe, Jr.

11. William E. Coxe, Jr. and Charlotte B. Coxe are the children of William E. Coxe and the grandchildren of Lamar N. Coxe, Sr.

12. From November 1, 1975 through October 31, 1976, the Company's directors were Lamar N. Coxe, Sr., Sidney E. Coxe, Lamar N. Coxe, Jr. and William E. Coxe.

13. Lamar N. Coxe, Sr. is the President of the Company and the Chief Executive Officer of its building materials division; Sidney E. Coxe is the Vice President of the Company and Chief Executive Officer of its real estate division; William E. Coxe is the Secretary of the Company and is employed in its building materials division; Lamar N. Coxe, Jr. is the Treasurer of the Company and supervises the activities of its home appliance and decorating sales service.

14. The Internal Revenue Service agent who conducted the examination of the Company's tax return for FYE 7610 was Eugene D. Maillet.

15. The "Audit Technique Handbook for Internal Revenue Agents" (IRM 4231) was available to Agent Maillet during his examination of the Company's FYE 7610 income tax return.

16. The Company's taxable income for its fiscal year 1972 through 1976 was as follows:

| | | |
|---|---|---|
| 1972 | — | $ 540,981.00 |
| 1973 | — | $1,132,055.00 |
| 1974 | — | $ 356,537.00 |
| 1975 | — | $ 582,529.00 |
| 1976 | — | $ 587,158.00 |

17. From incorporation and through FYE 7610, the Company did not declare or pay dividends to its stockholders; the company has been audited but never assessed an excess accumulated earnings penalty tax.

The court makes the following additional findings of fact:

18. The taxpayer corporation was originally organized by Sidney E. Coxe and two other persons who maintained brief affiliation. Shortly after its inception the late Warren O. Watson, Sr., a prominent Baton Rouge attorney and investor, and Lamar N. Coxe, Sr. became shareholders and joined management.

19. Mr. Watson provided legal counsel and guidance to the corporation maintaining its minute books and records. Since Mr. Watson's death, the same level of detail and careful attention to corporate record keeping has not occurred.

20. Management of the corporation is a close-knit family group, meeting frequently but without particular formality.

21. Prior to 1974, much of the company's real estate activities was conducted through separate corporations. Sidney Coxe during those years was compensated directly by most of the other corporations and received only a small amount of compensation from Builders Center.

22. During 1974, all real estate activities were merged into Builders Center and thereafter Sidney's compensation came almost exclusively from the taxpayer.

23. From its incorporation, plaintiff has successfully engaged in the sale of building materials and the development of real estate and income (investment) properties, including shopping centers, subdivisions, commercial developments and apartments.

24. Builders Center's relative success against larger competitors (e.g. national home center chain stores) is directly attributable to its competent management and the corporation's willingness to extend substantial credit to home builders and other contractors engaged in construction activity.

25. Builders Center does not have a similarly situated competitor (an integrated building materials real estate development operation) in its market area. Thus, there are no market area companies from which meaningful compensation data might be derived for purposes of comparison nor has any evidence of comparable compensation been tendered by either side.

26. After audit, the Internal Revenue Service allowed the following compensation for the four principal officers:

| | | |
|---|---|---|
| Lamar Coxe, Sr. | — | $ 86,000.00 |
| Sidney Coxe | — | $ 91,000.00 |
| L.N. Coxe, Jr. | — | $ 89,600.00 |
| William E. Coxe | — | $ 89,600.00 |

27. The examining Internal Revenue Service agent concluded that the compensation paid to Bill and L.N., Jr. was reasonable and further concluded that all four of the principal officers provided approximately the same level of services to the corporation and were of approximately equal value to the corporation. The evidence shows that the agent was flatly wrong in that conclusion.

28. The examining agent acknowledged, as does the government in brief, that the Coxe brothers both worked long hours and performed substantial services which benefited the corporation but the agent did not recognize that Sidney Coxe does not simply "manage" the real estate division, he *is* the real estate division and no other corporate employee could perform his services. Sidney Coxe's personal knowledge, experience, contacts and reputation are essential to the successful functioning of that part of the corporation's business.

29. By the same token, Lamar Coxe still personally conducts and supervises the building materials division and his skill and experience as a lumber trader are not matched by those of any other employee. L.N. Coxe, Jr. and Bill Coxe competently *administer* the portion of the business delegated to them but Lamar and Sidney Coxe provide the top management which is and was essential to the success of the corporation.

30. During 1976, the real estate division had 4 full-time employees and the building materials division had 75 full-time employees.

31. Builders Center paid its employees in ascending amounts, dependent upon their responsibilities and performance except that, prior to 1976, Lamar Coxe, Sr. was significantly underpaid.

32. Historically and during the year 1976 Lamar and Sidney Coxe each worked 60 to 72 hours per week on behalf of the company.

33. Lamar and Sidney Coxe have each committed personal credit to enable the corporation to acquire inventory, extend credit to homebuilders and other contractors and to engage in substantial real estate development activities which accounts for a significant portion of the corporation's building material sales, profits and taxable income.

34. Both have personally endorsed surety bonds to home builder customers of the corporation.

35. The taxpayer reported taxable income for 1976 of $587,158.00 on gross sales of $9,826,910.00. Gross profit in 1976 was $2,212,333.00 and net assets were $2,263,-910.00 producing a 5.98% return on sales, a 26.58% return on gross profit and a 26.2% return on investment. The company paid $307,096.00 in federal income tax for 1976 before the audit adjustment.

36. The taxpayer paid the following amounts in prior years:

| Year | Gross Income | Taxable Income | Taxes Paid |
|------|--------------|----------------|------------|
| 1972 | $6,970,267.00 | $ 908,375.00 | $ 418,463.00 |
| 1973 | $6,690,544.00 | $1,555,090.00 | $ 533,053.00 |
| 1974 | $6,321,700.00 | $ 356,537.00 | $ 150,707.00 |
| 1975 | $7,530,780.00 | $ 582,579.00 | $ 86,387.00 |

37. During 1976, Sidney Coxe was personally responsible for the confection of numerous leases and the start-up of numerous real estate operations which at that time were anticipated to be very profitable in the future and they have proven to be so.

38. Sidney Coxe is and has been regarded in this community as an extremely skilled real estate investor and developer. He serves on the board of directors of a local bank and is instrumental in promoting the overall financial well-being of the taxpayer.

39. Lamar Coxe enjoys a reputation in the community as an extremely skilled lumber trader. He also possesses substantial experience and skill in the credit analysis field and is largely responsible for credit evaluation of customers which enables the plaintiff to operate profitably and without significant loss on credit based transactions.

40. During the examination of the company, the examining agent misread the corporate minutes for March 15, 1974 and erroneously concluded in his report that the Board of Directors believed that the corporation could pay a dividend. An examination of the minutes reveals no such statement.

41. Plaintiff has been audited upon its accumulated earnings but has always satisfied the Internal Revenue Service of the need and reasonableness for that accumulation. The company operates in a cyclical, volatile industry, subject to extreme ranges of "good times" and "bad times." The company's need for current cash to extend credit to facilitate sales, to acquire inventory when inventory is available on advantageous terms and to finance real estate ventures is clearly established. Plaintiff has never been assessed an excess accumulated earnings penalty tax.

42. Although the taxpayer never paid a dividend to shareholders, its equity capital is not great and the shareholders expectations have been rewarded by the continued overall growth of the company.

43. Since at least 1973, the corporation has followed a policy of paying its four principal officers monthly salaries sufficient to cover their living expenses and additional bonuses authorized toward the end of the year when it could be determined the amount of cash available. Because of the corporation's need for cash to finance its operations, it has operated with a cash flow problem which prohibited paying substantial compensation to the four principal officers on a monthly basis.

44. In the early and formative years of the corporation, Lamar Coxe agreed to

forego some of his current compensation in order to provide the company badly needed operating capital. The evidence shows that Lamar Coxe was under-compensated prior to 1976 and the Board of Directors took this into consideration in determining compensation for 1976.

45. In years preceding 1976, Sidney Coxe, through his experience and skill, was able to engage the company in substantial real estate development operations without the necessity of paying a contractor's or developer's commission. Sidney Coxe also acquired for the company leases which resulted in substantial rental income and the corporation did not have to pay the usual brokerage commission.

46. Total compensation paid by the corporation to Sidney Coxe in 1976 in the amount of $141,000.00 was reasonable considering the services performed by him.

47. Total compensation paid in 1976 to Lamar Coxe, Sr. in the amount of $136,000.00 was reasonable considering the services rendered by him and his prior under-compensation.

48. Compensation paid to Sidney Coxe and to Lamar Coxe in 1976 was paid for services actually rendered and not as a disguised dividend.

### CONCLUSIONS OF LAW

This court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).

Taxes being more certain than just or logical, it is appropriate to start with the statutory language out of which this thorny dispute arises. The Internal Revenue Code, 26 U.S.C. § 162(a)(1) states:

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including

(1) A reasonable allowance for salaries or other compensation for personal services actually rendered.

■ That simple declaration has generated constant disagreement between taxpayers and the Internal Revenue Service as to whether compensation is in fact "reasonable" or "for personal services actually rendered," the Service being ever vigilant to ensure that no return on investment is disguised as personal compensation. The ultimate objective, of course, is to see to it that corporate dividends are paid to the owners only with after tax dollars, as the Congress has prescribed.

The Internal Revenue Service has added its gloss to the congressional declaration by regulation, 26 C.F.R. § 1.162–7 which provides, in part:

The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services.

(b) The tests set forth in paragraph (a) of this section and its practical application may be further stated and illustrated as follows:

(1) Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case the salaries are in excess of those ordinarily paid for similar services and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it would seem likely that these salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock...

(3) In any event, the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is, in general, just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances....

In the aftermath of *Charles McCandless Tile Service v. United States,* 422 F.2d 1336, 191 Ct.Cl. 108 (1970), a case in which the taxpayer was held to have paid a disguised

dividend, the Internal Revenue Service was widely reputed to have adopted and applied the so-called "automatic dividend rule," although so far as I can tell the service never publicly admitted it. In any event, the Service has now published revenue ruling 79–8 which specifically eschews application of an automatic dividend rule:

The failure of a closely held corporation to pay more than an insubstantial portion of its earnings as dividends on its stock is a very significant factor to be taken into account in determining the deductibility of compensation paid by the corporation to its shareholder-employees. Conversely, where after an examination of all of the facts and circumstances (including the corporation's dividend history) compensation paid the shareholder-employee is found to be reasonable in amount and paid for services rendered, deductions for such compensation under section 162(a) of the Code will not be denied on the sole ground that the corporation has not paid more than insubstantial portion of its earnings as dividends on its outstanding stock.

■ The taxpayer here concedes that it bears the burden of proving that the disallowance by the Internal Revenue Service was incorrect. *Botany Worsted Mills v. United States,* 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929); see *C.A. White Trucking Co., Inc. v. Commissioner,* 601 F.2d 867, (5th Cir.1979); *Miller Box, Inc. v. United States,* 488 F.2d 695 (5th Cir.1974) cert. denied 417 U.S. 945, 94 S.Ct. 3069, 41 L.Ed.2d 665. The taxpayer must prove both that the compensation was reasonable under all the circumstances and that it was paid for services actually rendered, not as a disguised distribution of profits.

The Internal Revenue Service (in its "Audit Technique Handbook for Internal Revenue Agents") (IRN 4231) as well as the courts, have from time to time attempted to identify factors which can aid in making a determination of reasonableness of compensation. See *Botany Worsted Mills v. United States,* 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929); *Trinity Quarries, Inc. v. United States,* 679 F.2d 205 (11th Cir.1982); *Petro-Chem Marketing Co., Inc. v. United States,* 602 F.2d 959, 221 Ct.Cl. 211, (1979); *Edwins, Inc. v. United States,* 501 F.2d 675 (7th Cir.1974); *Charles Schneider & Co., Inc. v. C.I.R.,* 500 F.2d 148 (8th Cir.1974), cert. denied 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975); *Charles McCandless Tile Service v. United States,* 422 F.2d 1336, 191 Ct.Cl. 108 (1970); *Jones Brothers Bakery, Inc. v. United States,* 411 F.2d 1282, 188 Ct.Cl. 226, (1969); *Bringwald, Inc. v. United States,* 334 F.2d 639, 167 Ct.Cl. 341 (1964); *Irby Construction Co. v. United States,* 290 F.2d 824, 154 Ct.Cl. 342 (1961). Each case ultimately concludes that all of the individual facts and circumstances should be considered and that where the recipients of the disputed compensation were major shareholders and the principal executive officers of the corporation, the court must closely scrutinize the circumstances under which the payments were made. *Logan Lumber Co. v. Commissioner,* 365 F.2d 846 (5th Cir. 1966); *Northlich, Stolley, Inc. v. United States,* 368 F.2d 272, 177 Ct.Cl. 435 (1966). In *Mayson Mfg. Co. v. Commissioner,* 178 F.2d 115 (6th Cir.1949), the court noted the following factors:

Although every case of this kind must stand upon its own facts and circumstances, it is well-settled that several basic factors should be considered by the Court in reaching its decision in any particular case. Such factors include the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distribution to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers, the amount of compensation paid to the particular employee in previous years. The action of the Board of Directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper. Id. at 119.

■ The foregoing language has been frequently quoted, see, e.g. *Charles Schneider & Co., Inc. v. C.I.R.,* 500 F.2d 148 (8th Cir.1974) cert. denied 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837, and sometimes supplemented, see *Kennedy v. Commissioner,* 671 F.2d 167 (6th Cir.1982). Turning to these frequently considered factors, we first note that both employees here involved are well-qualified and have much experience. They provide the top corporate management of the corporation and each is in complete charge of one of the two operating divisions of the company. Builders Center has grown from a small and fledgling concern to an established and successful building materials-real estate operation with gross income in 1976 of more than 10.5 million dollars, in 1977 of more than 13.7 million dollars and in 1978 of over 15.5 million dollars. The business is cyclical and volatile and requires skill and experience to successfully participate in it. The compensation paid each of these employees in 1976 amounted to less than 2% of the corporation's gross income and the corporation paid substantial taxes on its net income in 1976 as it has done in each year since at least 1972. General economic conditions in 1976 were quite good and the corporation had cash available to make the payments. This corporation has never paid a dividend but the evidence satisfactorily explains the reason why no dividend has been paid. Where there is no logical, demonstrable reason for failing to pay dividends or for paying only inconsequential dividends, that factor should be significant in determining whether payments designated as compensation were actually disguised dividends. Here the corporation, because of the nature of its operations had a continuing need for capital to finance its operations and its continued growth. There is no comparable concern in the immediate area and there is no evidence as to prevailing rates of compensation for comparable positions.

Reasonableness is a question of fact to be decided by the fact finder. *Kennedy v. C.I.R.,* 671 F.2d 167 (8th Cir.1982); *Roth Office Equipment Co. v. Gallagher,* 172 F.2d 452 (6th Cir.1949); *Capital-Barg Dry Cleaning Co. v. Commissioner,* 131 F.2d 712 (6th Cir.1942). This fact finder finds that the $141,000.00 compensation to Sidney Coxe and the $136,000.00 compensation to Lamar Coxe in 1976 was reasonable, considering their duties, responsibilities and services to the corporation as well as the fact that Lamar, particularly, was undercompensated in prior years. *Lucas v. Ox Fiber Brush Co.,* 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733 (1930).

In determining that these payments of compensation are reasonable, the court also took into consideration the fact that this corporation provides no fringe benefits such as pensions or profit sharing plans except a group insurance policy. *Kennedy v. C.I.R.,* 671 F.2d 167 (6th Cir.1982).

One of the primary factors which influenced the examining agent in determining that the compensation was unreasonable was his conclusion that all four of the principal officers were of equal value to the corporation. He therefore concluded that all should be compensated at approximately the same rate. As noted in the findings of fact, this conclusion is totally erroneous and is not supported by the evidence presented in court. On the contrary, the evidence establishes that Lamar and Sidney Coxe provide the essential top management and guidance for this corporation and that they have done so for many years. Their worth to the corporation greatly exceeds that of William Coxe and L.N. Coxe, Jr., as each of the latter testified at the trial. The agent approved as reasonable, the compensation paid to William and L.N. Coxe, Jr. in the total amount of $89,600.00 each and, since the evidence is conclusive that Sidney Coxe and Lamar Coxe are worth substantially more to the corporation than William and L.N., Jr., they should be compensated at a substantially greater rate by the corporation. That is what the corporation has done and the government's entire case is based upon this erroneous notion of equality among all four executive officers and failure to pay dividends.

■ It is well-settled that the mere fact that a corporation has not paid dividends is not determinative of whether compensation paid an employee amounts to a disguised

90

dividend. *Kennedy v. C.I.R.,* 671 F.2d 167 (6th Cir.1982) and cases discussed therein. The Internal Revenue Service itself, of course, recognizes this in its current regulations, 26 C.F.R. § 1.162–7. This corporation has adequately explained its failure to pay dividends and the absence of dividends will not convert the payment of reasonable compensation into disguised dividends.

The court finds that the compensation paid to Sidney Coxe and to Lamar Coxe in 1976 was deductible under 26 U.S.C. § 162(a)(1), that the Internal Revenue Service has erroneously assessed additional taxes in the amount of $45,501.00 and that defendant is entitled to have that amount plus interest refunded to it.