Moss, Judge,
delivered the opinion of the court:
In its tax return for the year 1917 plaintiff, Botany Worsted Mills, claimed as a deduction for compensation paid to its board of directors for the year 1917 the aggregate sum of $1,565,739.39 in addition to certain nominal salaries paid to the members of said board. The Commissioner of Internal Revenue disallowed on this item the sum of $783,-656.06, and on or about June 17, 1920, an additional assessment in the aggregate sum of $703,578.37 was made against plaintiff, which sum was paid by plaintiff on or about June 28, 1920. Of this amount $450,994.06 was attributable to the disallowance by the commissioner of the said sum of $783,-656.06, being a portion of the amounts paid as compensation to its directors, and claimed as a deduction for the year 1917. On February 1, 1922, plaintiff filed with the commissioner a claim for the refund of said sum of $450,994.06, which claim ivas rejected. This action is for the recovery of said amount.
The tax in this case was collected under the act of September 8, 1916, 39 Stat. 756, as amended by the act of October 3, 1917, 40 Stat. 300, the applicable portion of which is as follows:
“ §12. (a) In the case of a corporation, joint-stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—
“First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, * *
On January 11, 1890, plaintiff incorporated in its by-laws the following provision:
“ Par. 1. After the close of every half of the business year of the company a computation of profits shall be made, and if practicable a dividend not exceeding three per centum shall be paid to the stockholders.
“ Par. 2. At the close of the business year the net profits shall be distributed as follows, after suitable deductions shall have been made from the value of the property of the company:
*416 “ £(1) A dividend of six per centum is to be paid to the stockholders, in the computation of which any dividend or dividends already paid to the stockholders during the same business year shall be included.
“‘(2) The balance remaining is to be applied as follows:
“ ‘(a) Five per centum shall be placed in a reserve fund until the amount of the reserve fund thus accumulated shall be equal to twenty per centum of the paid-up capital of the company for the time being.
“ ‘(b) Twenty-five per centum is to be paid as a bonus to the board of directors. .
“ ‘ (c) Seventy per centum is to be paid as additional dividend to the shareholders.’
“ The board of directors may, however, with the consent of the majority of the shareholders, use a portion of the amount mentioned in the last paragraph, marked ‘ c ’ for special deductions from accounts or for the formation of a special reserve fund or for extra compensation, to be paid to employees or for any institutions which will benefit the employees, such as pension funds and the like.”
The above provision remained in effect until April 11,1903, at which time it was amended so that subdivision 2-b of paragraph 2 thereof read: “ Forty per centum is to be paid as a bonus to the board of directors.” In March, 1908, it was again amended so as to provide as compensation to the directors a sum equal to “ 32 per centum of said balance * * From that time until after the close of the taxable year 1917 the above provision remained in force, and annual payments during that period have continuously been made in accordance therewith. The said sum of $1,566,739.39 was a sum equal to 32 per cent of the balance of the net profits for the taxable year 1917, after the several deductions provided for in said by-laws had been made.
The Government has interposed two defenses to this action: First, it is claimed that the amount paid the directors for 1917 was unreasonable compensation; and, second, that in 1919 the various tax matters of plaintiff for 1917 were finally settled by compromise and mutual agreement.
These contentions will be considered in the order named above.
It is shown by the record that during the whole period of plaintiff’s existence its executive officers have been paid *417 as compensation in addition to certain fixed salaries a percentage of the net earnings. The board of directors determined each year the aggregate amount payable to its members in accordance with the by-laws. The distributions among its members were made by the board on the recommendation of its chairman, in conjunction with its treasurer and vice president. Each director holds a position as an executive officer, or manager, of a certain department of the business. This method of compensation was consistently followed for nearly 30 years, during which time the gross assets of plaintiff company had increased from $1,114,149.63 in 1890, to $28,893,777.12 in 1917; and its net assets, including reserves, had increased from $37,136.35 in 1890 to $10,999,862.48 in 1917. It is also made to appear that such method of compensating directors and officers has been the practice in many corporations engaged in the woolen manufacturing business. It follows, therefore, that the payment of such compensation to the directors of this corporation for the year 1917 constituted one of the “ ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties * * The Commissioner of Internal Bevenue, under the act of 1917, did not have authority to determine whether or not compensation paid to its officers by a corporation was unreasonable compensation, and to limit the deduction to - what he might consider reasonable compensation. He did have the right to determine whether or not the amount paid as compensation or salary wTas in fact something else, paid under the guise of salary. In this case the Government has not claimed that any part of the payments to the directors was not compensation, as claimed by plaintiff. The contention is, that the commissioner had authority to reduce the amounts actually paid to what he considered reasonable compensation. The case of United States v. Philadelphia Knitting Mills Company, 273 Fed. 657, decided June 13, 1921, seems conclusive on this point.
The Government contends that there was no legal authority at the time of the settlement of plaintiff’s taxes for the compromise of taxes between the Government and a taxpayer, *418 except as contained in section 3229 of the Revised Statutes, which reads as follows:
“ The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced. Whenever a compromise is made in any case there shall be placed on file in the office of the commissioner the opinion of the Solicitor of Internal Revenue, or of the officer acting as such, with his reasons therefor, with a statement of the amount of tax assessed, the amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and the amount actually paid in accordance with the terms of the compromise,” and that inasmuch as the procedure prescribed by this section was not adopted the agreement was invalid and unenforceable. It is not claimed by the Government that plaintiff’s taxes were settled under the provisions of section 3229. The theory upon which its defense on this point is based is that an agreement was entered into between plaintiff and the Commissioner of Internal Revenue under which plaintiff accepted the partial disallowance as to compensation, and also received certain concessions as to other disputed items, the benefit of which it still enjoys, and that, therefore, plaintiff is estopped from recovery in this action. In addition to the question of compensation there was pending at the same time and for the same year the question of depreciation and also the question of reserves charged to expenses. These items involved important amounts. All matters in dispute between plaintiff and the Government were settled, and the 1917 taxes were paid in accordance with the agreements theretofore reached in conference in the Internal Revenue Bureau. The negotiations in the bureau extended over a period of several months, involving considerable correspondence and numerous conferences.
*419 With reference to the compensation item, it should be mentioned that on July 30, 1918, the Alien Property Custodian, holding more than two-thirds of the shares of plaintiff company, caused the by-laws with reference to the compensation feature to be amended so as to provide that the directors should thereafter receive such sum, not exceeding 32 per cent of the balance of the net profits, “ as the board of directors shall in its sole discretion determine.” Under the amended by-laws, and by the determination of the board, the directors received as their aggregate compensation for the year 1918 the sum of $593,416.96. In the conferences in the bureau plaintiff was represented by its counsel, John Quinn, who died before this action was instituted, and the bureau was represented by Sidney Alexander, then chief of what is called the special audit section, together with certain of his official associates. Plaintiff’s counsel was advised by Alexander that in view of the fact that the new ownership, meaning the Alien Property Custodian, had considered the compensation for the year 1918 as being fair and reasonable, it was his opinion that the same conclusion “could be reached upon the part of the Government in considering it a fair and reasonable amount for 1917.” This item was finally settled on that basis. From time to time throughout the progress of the negotiations in the bureau plaintiff’s counsel reported to its board of directors the substance of the matters occurring in such conferences. That plaintiff derived an advantage in the settlement of this controversy is shown by the minutes of its board of directors of date April 23, 1920, wherein the various items in dispute, all having been agreed upon in conference, were discussed. (See Finding XIX.) The following statement is made:
“ This shows a saving to the company, between the original amount claimed and what will be the final assessment, of $663,507.16.”
Thereafter plaintiff prepared amended returns based upon the figures theretofore agreed upon in the bureau conferences, and same were forwarded to the Commissioner of Internal Itevenue, together with certain documentary evidence which it was agreed at the last conference in the *420 bureau should be furnished. With one slight change the tax shown by the amended returns was paid.
With the payment of the tax under the circumstances surrounding this case the agreement, which is mentioned in the record as a u gentleman’s agreement,” became in legal effect an executed contract of settlement. Plaintiff now seeks to recover on account of the particular item, which it regards as unfavorable to its interests, and at the same time hold to the advantage derived from the settlement of other items in dispute involved in the same general settlement.
It is the opinion of the court that plaintiff should not be allowed a recovery. It is therefore adjudged that the petition herein should be, and the same is hereby, dismissed.
Graham, Judge; Hay, Judge; Booth, Judge; and Campbell, Chief Justice, concur.