**GENERAL SPLIT CORPORATION, a Wisconsin corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 73-2002.**

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1974.

Decided July 17, 1974.

George J. Laikin and Joseph I. Swietlik, Milwaukee, Wis., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Libero Martinelli, Jr., Atty., Tax Div., U. S. Department of Justice, Washington, D. C., David J. Cannon, U. S. Atty., Milwaukee, Wis., for defendant-appellee.

Before PELL, STEVENS and SPRECHER, Circuit Judges.

---

SPRECHER, Circuit Judge.

This case presents the question of whether a settlement agreement, effected by, *inter alia*, the execution of a Form 870–AD equitably estopped the taxpayer from later seeking a refund of deficiencies paid as part of the settlement.

**I**

Commencing with its organization in 1955, the taxpayer entered into a loan agreement with Kivie Kaplan (Kaplan Loan) providing for a loan of $175,000 to be repaid with interest within ten years. In 1959, taxpayer entered into a loan agreement with the Levine and Sokol family trusts (trust loans) providing for a $50,000 loan to be repaid with interest within ten years. Taxpayer claimed interest deductions in every year that interest was payable. Upon an audit of taxpayer's returns for the taxable years of 1962, 1963, and 1964, the interest deductions on the Kaplan loan for those years were disallowed on the grounds that the advances were not true loans but equity capital. Deficiencies were asserted by statutory notice on December 17, 1964, and on March 15, 1965 taxpayer petitioned the United States Tax Court for a redetermination. Subsequent audits for the taxable years of 1964 and 1965 resulted in disallowance of interest deductions with respect to both the Kaplan and trust loans on the same theory as the earlier disallowance. For the entire five year period, 1962 through 1966, deficiencies totalling $255,707.06 were asserted by the IRS.

In October 1966 during the pendency of the Tax Court case, the parties negotiated a settlement of all deficiencies asserted. The agreement was evidenced by the following:

(1) A stipulated Tax Court decision entered November 9, 1966 which effected a 20 percent disallowance of the interest deductions claimed with respect to the Kaplan loan in the taxable years of 1962, 1963 and 1964. This decision became final in February, 1967; 26 U.S.C. §§ 7481, 7483.

(2) The execution of a "Collateral Agreement" dated October 31, 1966. The agreement stated that taxpayer had offered to effect a settlement of tax liabilities with respect to the Kaplan loan for the 1965 and 1966 years which offer consisted of a 20 percent disallowance of the claimed deductions. The agreement further stated that "as an integral part of the proposal for settlement of its tax liabilities for the taxable years [1965 and 1966] . . . and as additional consideration for the acceptance of said proposal by . . . the Commissioner of Internal Revenue . . ." the taxpayer agreed not to claim interest deductions on the Kaplan loan for subsequent taxable years. The agreement was executed by taxpayer on October 31, 1966.

(3) The execution of a Form 870–AD which effected an approximately 20 percent disallowance of the interest deductions claimed with respect to the Kaplan loan and a 100 percent disallowance of the interest deduction claimed on the trust loans. This agreement covered the 1965 and 1966 taxable years. The 870–AD was executed by taxpayer on October 31, 1966 and accepted on behalf of the Commissioner of Internal Revenue by the Chief of the Appellate Branch Office on November 2, 1966.

The taxpayer paid the deficiencies assessed under the settlement by April 24, 1967. On February 11, 1969, taxpayer filed a claim for refund alleging an improper disallowance of interest payments on the trust loans. The claim for refund was disallowed in full on May 19, 1970 and accordingly, on December 30, 1971 this suit was filed in the district court. At the time the refund claim was filed, assessment of deficiencies for all years but 1966[1] was barred either by the stipulated Tax Court decision or the

---

1. When the claim for refund was filed, the IRS arguably had three months to assess a deficiency for 1966 even though the claim for refund did not refer to the settlement agreement or state that the taxpayer was repudiating Form 870–AD.

statute of limitations on assessments (26 U.S.C. §§ 6501, 6072(b)).

The transactions of the parties up to this point can be summarized as follows:

| Kaplan Loan | Interest Deductions Claimed | Total Deficiency Assessed | Total Assessment Under Stipulated Decision | Total Assessment Under Collateral Agreement and 870–AD |
|---|---|---|---|---|
| 1962 | $ 31,107.85 | | $22,632.71 (20% disallowance) | None |
| 1963 | 33,302.08 | $102,126.86 | | |
| 1964 | 129,960.30 | | | |
| 1965 | 239,546.56 | 127,403.74 | None | $32,332.28 (Approx. 20% disallowance) |
| 1966 | 9,555.24 | | | |
| | $443,472.03 | $229,530.60 | $22,632.71 | $32,332.28 |

| Trust Loan | Interest Deductions Claimed | Total Deficiency Asserted | Total Assessment Under Stipulated Decision | Total Assessment Under 870–AD |
|---|---|---|---|---|
| 1965 | $17,110.46 | $26,117.46 * | None | $26,177.46 |
| 1966 | 36,828.24 | | | |
| | $53,938.70 | $26,177.46 | | $26,177.46 |

* Amount which is the subject of the refund suit.

---◆---

The district court granted summary judgment for defendant on the theory that taxpayer was estopped from bringing the action because of the settlement agreement on which the government detrimentally relied, citing Lignos v. United States, 439 F.2d 1365 (2d Cir. 1971); General Split Corp. v. United States, 363 F.Supp. 313 (E.D.Wis.1973). We affirm.

2. Section 7121. Closing agreements

(a) Authorization.—The Secretary or his delegate is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

(b) Finality.—If such agreement is approved by the Secretary or his delegate (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or

## II

The 1954 Internal Revenue Code includes two provisions for the administrative settlement of liability for taxes. Under 26 U.S.C. § 7121 [2] the Secretary or his delegate is authorized to enter into a closing agreement regarding the tax liability of any person which, when approved, is final and conclusive. Under

malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded. Aug. 16, 1954, c. 736, 68A Stat. 849.

26 U.S.C. § 7122 [3] the Secretary or his delegate is authorized to compromise any civil or criminal tax case where there is doubt as to liability and/or collectibility (Treas.Reg. § 301.7122–1). These provisions have not, however, meshed well with the realities attending the settlement of tax controversies.

The unwieldiness of these statutory schemes for the settlement of cases involving our internal revenue laws, the physical impossibility of having the designated officers pass on every proposed agreement, and the many months of indecision between the inception of an offer and ultimate action by the Department have all contributed to the development of an expanding practice in Bureau procedure, the non-statutory settlement.[4]

The agreement with respect to the trust loans was embodied in a Form 870–AD, Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment, which is an appellate device for effecting a non-statutory settlement. The form recites that the taxpayer, pursuant to 26 U.S.C. § 6213(d), offers to waive the restrictions on assessment and collection provided in 26 U.S. C. § 6213(a); [5] that the taxpayer consents to the assessment and collection of the deficiencies specified and accepts the overassessments as correct; that after acceptance by or on behalf of the Commissioner "the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or an excessive tentative allowance of a net operating loss carryback"; and that "no claim for refund or credit shall be filed or prosecuted for the year(s) above stated . . . ." The form also contains the following disclaimer:

> NOTE—The execution and filing of this offer will expedite the adjustment of your tax liability. It is not, however, a final closing agreement under section 7121 . . . nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax.

In Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L. Ed. 379 (1929), the Supreme Court resolved the question of whether an agreement which did not comply with the statutory requirements for compromises

---

3. Section 7122. Compromises
   (a) Authorization.—The Secretary or his delegate may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegates may compromise any such case after reference to the Department of Justice for prosecution or defense.
   (b) Record.—Whenever a compromise is made by the Secretary or his delegate in any case, there shall be placed on file in the office of the Secretary or his delegate the opinion of the General Counsel for the Department of the Treasury or his delegate, with his reasons therefor, with a statement of—
   (1) The amount of tax assessed,
   (2) The amount of interest, additional amount, addition to the tax, or assessable penalty, imposed by law on the person against whom the tax is assessed, and
   (3) The amount actually paid in accordance with the terms of the compromise. Notwithstanding the foregoing provisions of this subsection, no such opinion shall be required with respect to the compromise of any civil case in which the unpaid amount of tax assessed (including any interest, additional amount, addition to the tax, or assessable penalty) is less than $500. Aug. 16, 1954, c. 736, 68A Stat. 849.

4. Gutkin, Informal Federal Tax Settlements and Their Binding Effect, 4 Tax L.R. 477, 480 (1949).

5. 26 U.S.C. § 6212 requires the Service to send a written notice of deficiency and under 26 U.S.C. § 6213 the Service is prohibited from assessing or collecting the deficiency for 90 days. During the 90 day period the taxpayer may file a petition for redetermination in the Tax Court. However, 26 U.S. C. § 6213(d) permits the taxpayer to waive his right to written notice. The waiver allows the Service to immediately assess and collect the deficiency and denies the taxpayer the right to petition the Tax Court for a redetermination.

constituted a binding settlement between the taxpayer and the government.

We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised . . . . When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Raleigh, etc. R. R. Co. v. Reid, 13 Wall. 269, 270, 20 L.Ed. 570; Scott v. Ford, 52 Or. 288, 296, 97 P. 99.

278 U.S. at 288–289, 49 S.Ct. at 131. Under the Revenue Act of 1916, a compromise was the only settlement procedure provided. See 278 U.S. at 286 n. 5, 49 S.Ct. 129. The compromise provision (similar to the present section 7122) provided, inter alia, that only the Commissioner, with the advice and consent of the Secretary of the Treasury, was authorized to compromise tax suits. Since the Secretary of the Treasury had not assented to the agreement, the Court concluded that "[f]or this reason, if for no other, the informal agreement made in this case did not constitute a settlement which in itself was binding upon the Government or the Mills." 278 U.S. at 289, 49 S.Ct. at 132.

In Botany Mills, although not expressly stated, it would appear that the statute of limitations on assessments had run.[6] In the Court of Claims, the government's theory was that "an agreement was entered into . . . under which plaintiff accepted the partial disallowance as to compensation, and also received certain concessions as to other disputed items, the benefit of which it still enjoys, and that, therefore, plaintiff is estopped from recovery in this action." Botany Worsted Mills v. United States, 63 Ct.Cl. 405 (1927).[7] The Supreme Court without suggesting whether it was considering the running of the

government's right to assess a deficiency stated:

[W]ithout determining whether such an agreement, though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel, it suffices to say that here the findings disclose no adequate ground for any claim of estoppel by the United States.

278 U.S. at 289, 49 S.Ct. at 132.

Since the Supreme Court decided Botany Mills, the courts have been grappling with the question of under what circumstances, if any, a non-statutory agreement can become "binding on the parties by estoppel." The cases are by no means consistent.[8] Bennett v. United States, 231 F.2d 465 (7th Cir. 1956) involved an executor's action for a refund of estate tax which was held by the district court to be barred by reason of a settlement agreement. In accordance with the settlement, the executors executed a waiver of restriction against immediate assessment and collection of the deficiency which was accepted by the Head of the Chicago Division Technical Staff. The executors paid the agreed-upon deficiency but after the statute of limitations for assessments had run, the executors filed a claim for a refund of the taxes so paid. This court reversed the district court, which had held the action to be barred.

In Bennett, the waiver of restrictions recited that the waiver was "subject to acceptance by or on behalf of the Commissioner . . . and if not thus accepted will have no force or effect." The waiver also stated that the taxpayer agreed "upon request of the Commissioner to execute at any time a final closing agreement . . . under the provisions of section 3760 of the Internal Revenue Code."

---

6. Section 14(a) of the Revenue Act of 1916, ch. 463, 39 Stat. 772 provided for a three year statute of limitations on assessments.

7. The minutes of the board of directors of Botany Mills revealed that the agreement reached "shows a saving to the company between the original amount claimed and what

will be the final assessment of $663,507.16." 63 Ct.Cl. at 414.

8. For a collection of the cases see Uinta Livestock Corp. v. United States, 355 F.2d 761 (10th Cir. 1966). See also 9 Mertens, Law of Federal Income Taxation § 52.07 (1971) ; Gutkin, supra note 4, at 483–89.

Section 3760, Internal Revenue Code of 1939, 53 Stat. 462, provided:

> The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

The Court in *Bennett* indicated that the record did not show that the Head of the Technical Staff had been authorized "to close out the matters described" in the waiver of restrictions.[9] The court concluded:

> The statutory power to bind the government stems from § 3760. For Exhibit D [the waiver agreement] to effectively foreclose these executors it should have been executed by the Commissioner, or by some officer or employee expressly authorized so to do by the Commissioner, under § 3760. By that provision Congress mandated the specific administrative process by which finality of closing agreements could be achieved. Nothing short of action by the Commissioner will satisfy the exclusive statutory method for vitalizing and formalizing the subject-matter of Exhibit D. Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379. We think it a conservative assumption to make, that the Internal Revenue Service possessed some faint awareness that the applicable statute of limitations was not tolled. The power and ability to comply with § 3760 lay solely within the organization of the Service, nothing else was needed from these executors.

231 F.2d at 468.

Clearly, the court was concerned with the fact that under the circumstances the government knew or should have known that the waiver as executed was not binding either because the form itself recited that the agreement would have no effect absent acceptance by or on behalf of the Commissioner or because the agreement was not a "formal closing agreement" within section 3760. Thus the government had not relied on the agreement in allowing its rights of assessment to expire. Accordingly, a bar to the suit on an equitable estoppel basis was not appropriate.

In the case before us, the government has contended that the stipulated Tax Court decision, the Collateral Agreement, and Form 870–AD represent a package settlement. The affidavit of the Internal Revenue Appellate Conferee filed in the district court by the defendants bears out this contention. In February, 1967 when the time for appeal had expired, the portion of the settlement effected by the Tax Court decision became final and could not be set aside or reviewed. Lasky v. Commissioner, 235 F.2d 97 (9th Cir. 1956), aff'd per curiam, 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957). At that point a large part of the consideration furnished by the government for the package deal was beyond its reach. The taxpayer seeks to litigate the question of appropriate taxation of the trust loans even though the government is now able to recoup by setoff at best only the asserted tax liability for the taxable years of 1965 and 1966.

The taxpayer has not suggested here or in the district court that the government would have agreed to the stipulation in the Tax Court litigation regardless of any settlement agreement for tax years 1965 and 1966.[10] The parties

9. The Chief of the Appellate Branch Office, the official who executed Form 870–AD in this case, is now authorized by the Commissioner to enter into closing agreements, Delegation Order No. 97 (Rev. 2), 1966–2 Cum.Bull. 1189.

10. Taxpayer's briefs here and in the district court cite Lignos v. United States, 439 F.2d 1365 (2d Cir. 1971), for the proposition that summary judgment will be denied when material issues of fact are in dispute. The court in *Lignos* remanded the cause because

here, unlike in *Bennett*, were bound at the time the Tax Court decision became final. At that juncture, considering the integrated nature of the settlement, there was no equitable way to undo the portion of the settlement reflected in Form 870–AD. The district court appropriately granted summary judgment for the government.

Affirmed.

the affidavits placed in dispute the issue of whether the parties had entered into a package agreement. On this basis, *inter alia*, we think that taxpayer was sufficiently aware of the importance of determining whether or not the Tax Court stipulation and Form 870–AD agreement were integrally related.