PIERRE BOULEZ, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8902–78.     Filed February 4, 1981.

*Allen Greenberg,* for the petitioner.

*Theodore J. Kletnick* and *Anne Hintermeister,* for the respondent.

## OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioner's income tax in the amounts of $25,247.68 for the taxable year ended December 31, 1971, and $19,212 for the taxable year ended December 31, 1972. The case is before us on petitioner's motion for summary judgment but, as will subsequently appear, its posture is such that the Court may be in a position to enter a qualified decision for respondent (see note 2 *infra*).

Petitioner Pierre Boulez (Boulez), a French citizen, is a world-renowned conductor, composer, and music director. During 1971 and 1972, Boulez, then a resident of Germany, pursuant to a contract entered into with Beacon Concerts, Ltd. (Beacon), a United Kingdom corporation, performed services in the United States for the New York Philharmonic Orchestra (Philharmonic) and the Cleveland Orchestra under separate contracts entered into by each with Beacon.

Boulez continued to perform services in the United States for the Philharmonic in 1973, 1974, and 1975. Boulez filed timely United States Nonresident Alien Income Tax Returns with the Internal Revenue Service for each of the years 1971 through 1975. In July 1975, the Internal Revenue Service requested that the Philharmonic withhold U.S. income tax at the rate of 30

percent on the gross income paid for Boulez' services. In March 1976, Boulez engaged the services of Graubard, Moskovitz, McGoldrick, Dannett & Horowitz to represent him before the Internal Revenue Service. In this connection, Irving Moskovitz (Moskovitz) appeared for Boulez before, and negotiated on behalf of Boulez with, the Director of International Operations, Joseph McGowan (McGowan).

On May 3, 1976, Moskovitz conferred with McGowan in the latter's office in Washington, D.C. Although there is a genuine issue of material fact as to whether they reached an agreement at that meeting, respondent has conceded that, for the limited purpose of disposing of petitioner's motion, the Court may assume that an oral agreement of compromise did exist, which included the following:

Moskovitz, on behalf of Boulez, agreed that Boulez would file amended United States Nonresident Alien Income Tax Returns for the years 1973 and 1974 so as to treat the amounts paid to Beacon for the furnishing of Boulez' artistic services in the United States as if they had been paid directly to Boulez and as constituting gross income of Boulez. McGowan agreed in return that past years (i.e., 1971 and 1972) would remain as filed and no further action or payments on Boulez' part would be required, or adjustments made, with respect to any years prior to 1973, and further agreed that no penalties would be asserted with respect to the late filing of tax returns and late payment of additional income tax for the years 1973 and 1974.

In reliance upon said promises of McGowan, Boulez fulfilled the promises made on his behalf as follows:

(a) On May 4, 1976, he terminated his agreement with Beacon as of July 1, 1975, personally assumed the obligations imposed on Beacon by its contract with the Philharmonic, and rendered himself personally liable to the Philharmonic for any breach of such obligations;

(b) He did not challenge the Internal Revenue Service with respect to, or contest the inclusion in his gross income for the year 1973 and subsequent thereto of, the amounts paid to Beacon for the furnishing of his artistic services in the United States;

(c) He did not challenge the Internal Revenue Service with respect to, or contest the applicability to him of, Rev. Rul. 74–330, 1974–2 C.B. 278, and Rev. Rul. 74–331, 1974–2 C.B. 282, in

which the respondent set forth his position regarding foreign entertainers and loan-out arrangements;

(d) He did not, with regard to the payments to Beacon, challenge the respondent with respect to, or contest the applicability to him of, the provisions of the United States-United Kingdom Income Tax Convention or any other income tax convention;

(e) He filed amended 1973 and 1974 United States Nonresident Alien Income Tax Returns on February 2, 1977, reporting as his gross income the amounts paid to Beacon or to him for the furnishing of his artistic services in the United States to the Philharmonic and paid the additional income tax due thereon; and

(f) He refrained from filing any claims for refund of tax paid in accordance with the agreement.

The issues presented for decision are whether (1) the assumed agreement constituted a binding compromise within the meaning of section 7122,[1] which respondent breached by issuing the notice of deficiencies involved herein, and (2) in any event, respondent is estopped from asserting those deficiencies against the petitioner. The parties are in agreement that if these questions are answered in the negative, the petitioner's motion should be denied and the Court may enter a decision for respondent in respect of the deficiencies set forth in the notice of deficiency.[2] Otherwise, the parties have stipulated that if petitioner's motion should be granted, there should be a trial limited to the issue of whether an agreement was concluded between Moskovitz (on behalf of petitioner) and McGowan (on behalf of respondent), with decision entered in favor of petitioner or respondent depending upon the Court's resolution of that issue.

Initially, the parties lock horns as to whether section 7122 authorizes an *oral* agreement of compromise.[3] Petitioner con-

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years at issue.

[2]Petitioner has stipulated that, in such event, the amounts of gross income as determined by respondent in his notice of deficiency are correct. There is an adjustment, in respect of U.S. income tax withheld at source, which the parties expect to agree upon or, if not, can be disposed of under Rule 155, Tax Court Rules of Practice and Procedure.

[3]Sec. 7122 provides:

SEC. 7122. COMPROMISES.

(a) AUTHORIZATION.—The Secretary or his delegate may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice

tends that it does, drawing support for that position from the fact that section 7121, dealing with closing agreements, specifically refers to "an agreement in writing," while section 7122 contains no such qualifying language. Respondent contends that section 7122 requires a written agreement. The issue is one that has never been squarely faced by any court[4] and, for reasons hereinafter set forth, we find it unnecessary to resolve it herein. We are constrained to note, however, that: (1) There is an indication—albeit peripheral—in the legislative history of an analogous provision dealing with compromises (Act of March 3, 1863, ch. 76, sec. 10, 12 Stat. 740, enacting Rev. Stat. sec. 3469) that a written agreement was contemplated by the Congress. See J. Seidman, Legislative History of Federal Income Tax Laws 1938–1861, at 1060 (1938); (2) it does not follow from the fact that section 7121 specifically refers to "an agreement in writing" that interpreting section 7122 to impose such a requirement would necessarily be invalid; and (3) respondent's regulations specifically require a written offer and acceptance, secs. 301.7122–1(d) and 601.203(a) and (b), Proced. & Admin. Regs., and we would hesitate to hold these regulations invalid.

---

for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

(b) RECORD.—Whenever a compromise is made by the Secretary or his delegate in any case, there shall be placed on file in the office of the Secretary or his delegate the opinion of the General Counsel for the Department of the Treasury or his delegate, with his reasons therefor, with a statement of—

(1) The amount of tax assessed,

(2) The amount of interest, additional amount, addition to the tax, or assessable penalty, imposed by law on the person against whom the tax is assessed, and

(3) The amount actually paid in accordance with the terms of the compromise.

Notwithstanding the foregoing provisions of this subsection, no such opinion shall be required with respect to the compromise of any civil case in which the unpaid amount of tax assessed (including any interest, additional amount, addition to the tax, or assessable penalty) is less than $500.

[4]*Botany Mills v. United States*, 278 U.S. 282, 289 (1929), affg. 63 Ct. Cl. 405 (1927), which applied the early predecessor of sec. 7121 (Act of July 20, 1968, ch. 186, sec. 102, 15 Stat. 166, Rev. Stat. sec. 3229), refers to an "informal agreement" (or "gentleman's agreement," see 63 Ct. Cl. at 420) which appears to have been oral, see *Rubel Corp. v. Rasquin*, 43 F. Supp. 111, 118 (E.D. N.Y. 1942), but neither the Court of Claims nor the Supreme Court addressed the issue. In *McIlhenny v. Commissioner*, 39 F.2d 356 (3d Cir. 1930), affg. 13 B.T.A. 288 (1928), also involving Rev. Stat. sec. 3229, the opinion of the Court of Appeals makes a passing reference to the fact that "there was no agreement in writing" but adds the words "or otherwise." *Country Gas Service, Inc. v. United States*, 405 F.2d 147 (1st Cir. 1969), involved an oral agreement in the context of sec. 7122, but the case was decided on the lack of authority of an internal revenue agent without any discussion of the oral agreement point.

*Boske v. Comingore*, 177 U.S. 459 (1900); see *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496 (1948); cf. *Accardi v. Shaughnessy*, 347 U.S. 260, 265–266 (1954).

As we see it, the real issue is whether, irrespective of the scope of section 7122 insofar as an oral agreement is concerned, McGowan (as Director of the Office of International Operations) had authority to enter into an oral compromise. Resolution of this question requires an analysis of the source and scope of his authority. Delegation Order No. 32 (Rev. 1), 1970–2 C.B. 487, gave the Director of International Operations the same authority as a District Director of Internal Revenue "under provisions of Treasury Regulations" in administering and directing the functions of the Office of International Operations.[5] Delegation Order No. 11 (Rev. 6), 1971–1 C.B. 653, delegated to the Director of International Operations, as well as District Directors and certain other officials, authority "under section 7122 of the Internal Revenue Code, to accept offers in compromise," subject to monetary and other limitations not relevant herein. Rev. Proc. 64–44, 1964–2 C.B. 974, specifically refers to Delegation Order No. 11 (Rev. 3), 1963–2 C.B. 732, and states that "This is a 'limited' delegation to the extent that the delegated authority must be exercised in accordance with the limitations prescribed by section 301.7122–1 of the Regulations on Procedure and Administration."[6]

As we have already pointed out (see p. 212 *supra*), section 301.7122–1(d), Proced. & Admin. Regs., specifically requires a written offer and acceptance.

Petitioner seeks to avoid the clear impact of the foregoing by asserting that his counsel "went to the one person in the Office of International Operations, its Director, *whom he knew to be a solid, sound and reliable official* of long-time service in the I.R.S. *having authority to bind the Commissioner*." (Emphasis added.)

---

[5] Announcement of the establishment of the Office of International Operations was made by Rev. Proc. 55–2, 1955–2 C.B. 898.

[6] While Delegation Order No. 11 (Rev. 3) contained language similar to that set forth in Rev. Proc. 64–44, namely, that the delegation was "Subject to the limitations contained in applicable regulations and procedures," and Delegation Order (Rev. 6) does not contain such language, we attach no significance to such omission; in light of the clear reference to the limitations prescribed by sec. 301.7122–1, Proced. & Admin. Regs., set forth in Rev. Proc. 64–44, repetition of that language in subsequent revisions of Delegation Order No. 11 would have been superfluous.

We find it hard to understand how such counsel could have *known* that McGowan had authority to conclude an oral compromise agreement in light of the clear import of the above-mentioned delegation orders, revenue procedure, and regulations. At best, such counsel may have assumed that McGowan had such authority (see *Baker v. Commissioner*, 24 T.C. 1021, 1024 (1955)), but this is simply not enough to confer the necessary authority on McGowan. It has long been settled that "persons dealing with an agent of the government must take notice of the limitations of his authority." *Bornstein v. United States*, 170 Ct. Cl. 576, 582, 345 F.2d 558, 562 (1965); see *Smale & Robinson, Inc. v. United States*, 123 F. Supp. 457, 465 (S.D. Cal. 1954); *Graff v. Commissioner*, 74 T.C. 743, 762 (1980); *Midwest Motor Express, Inc. v. Commissioner*, 27 T.C. 167, 182 (1956), affd. 251 F.2d 405 (8th Cir. 1958). We hold that McGowan lacked the necessary actual or apparent[7] authority to conclude a binding oral compromise agreement.[8]

Petitioner further asserts that, even though there may not have been a binding compromise agreement between McGowan and himself, respondent is nevertheless equitably estopped from asserting the deficiencies herein because petitioner relied on what he thought was an agreement of compromise and changed his position to his detriment. He points to the following language in *Botany Mills v. United States*, 278 U.S. 282, 289 (1929): "And, without determining whether such an agreement [compromise], though not binding in itself, may when executed become, under some circumstances, binding on the parties." Respondent argues that petitioner has not shown the necessary elements to justify invoking equitable estoppel.

We start from the premise that the doctrine of equitable

---

[7] Petitioner's reliance on Delegation Order No. 77 (Rev. 8), 1975–1 C.B. 636, as giving McGowan apparent authority, is totally misplaced. That order dealt only with the authority to issue deficiency notices.

[8] In view of this holding, we find it unnecessary to consider a further argument of respondent that the requirement of sec. 7122(b), namely, that an opinion of the General Counsel of the Treasury be filed, was not met. There appears to be some difference of judicial opinion as to whether this requirement is mandatory or directory. See *Botany Mills v. United States*, *supra*; *Hamilton v. United States*, 163 Ct. Cl. 116, 123–124, 324 F.2d 960, 964 (1963); *Hanby v. Commissioner*, 67 F.2d 125, 129 (4th Cir. 1933), affg. 26 B.T.A. 670 (1932); *Backus v. United States*, 75 Ct. Cl. 69, 59 F.2d 242, 256 (1932). See also 301.7122–1(e), Proced. & Admin. Regs. We further note that, unlike its predecessors, sec. 7122 no longer requires the personal approval of the Secretary of the Treasury.

estoppel is applied against the Government "with the utmost caution and restraint." See *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617–618 (1977), and cases cited thereat. See also *Graff v. Commissioner, supra* at 761–762. The courts have set forth several conditions which come into play in determining whether such doctrine should be so applied. See *Lignos v. United States*, 439 F.2d 1365, 1368 (2d Cir. 1971); *Estate of Emerson v. Commissioner, supra*. A key condition is detrimental reliance by the party claiming the benefit of the doctrine on the action of the Government. See *Hudock v. Commissioner*, 65 T.C. 351, 363 (1975). It is to this condition that we turn our attention. See *Graff v. Commissioner, supra*.

Our findings of fact (see pp. 210–211 *supra*) set forth the actions which petitioner took in reliance on the oral agreement.[9]

We fail to see how the fact that petitioner terminated his agreement with Beacon and directly assumed the obligations imposed by Beacon's contract with the New York Philharmonic constituted the requisite detrimental reliance. It appears to us that petitioner simply substituted an equivalent obligation to perform services, the only difference being a change in the obligee.

We reach a similar conclusion with respect to the fact that petitioner did not contest the inclusion in his gross income for 1973 and subsequent years of any amounts paid to Beacon for the furnishing of artistic services by him in the United States. The short answer is that, at the time the deficiency notice herein was issued on May 5, 1978, in breach of the compromise agreement and indeed when the petition herein was filed (it was mailed in an envelope postmarked July 26, 1978), neither the 2-year period for filing a claim for refund for the amounts paid on February 2, 1977, in respect of 1973 and 1974 nor the 3-year period in respect of subsequent years had expired. Sec. 6511(a). The mere fact that petitioner included amounts in his gross income and paid taxes thereon which he might otherwise have not so included or so paid is not, in our opinion, a sufficient detriment to warrant the application of equitable estoppel.

---

[9]Respondent has conceded the existence of an oral agreement solely for the purpose of this motion (see p. 209 *supra*), but has not similarly limited his stipulation as to elements of reliance set forth in the affidavit of Moskovitz in support of petitioner's motion and which are stated by Moskovitz to be "a complete enumeration" of petitioner's reliance.

Petitioner's reliance upon the agreement may have caused him to lose his ability to contest the merits of his claims in *this* Court (because his payment precluded the respondent from issuing a notice of deficiency, such notice being a statutory prerequisite to our jurisdiction, see sec. 6213(a)), but it did not prevent petitioner from litigating the issue of taxability in other forums.

Any claim by petitioner that he put himself in a worse position with respect to taxability of amounts paid for his services to the Philharmonic because they were paid to him directly from a source within the United States and thus may have inhibited his ability to claim, by way of a suit for refund for 1973 and 1974, whatever benefits might have been derived from the continued existence of a "loan-out" arrangement between Beacon and the Philharmonic is undercut by his concession herein that, absent a binding compromise agreement or estoppel, he is liable for the deficiencies asserted herein for 1971 and 1972 when the "loan-out" arrangement was in existence.[10] Similar reasoning disposes of the other acts of reliance asserted by petitioner.

The long and the short of the matter is that we conclude that the acts of reliance by petitioner do not involve the level of detriment necessary to bring the instant case within the category of those "rare instances" where respondent should be estopped. See *Estate of Emerson v. Commissioner, supra* at 618.

The cases relied upon by petitioner are all distinguishable: *Miller v. United States*, 500 F.2d 1007 (2d Cir. 1974) (respondent had led the taxpayer to believe that a filing deadline, and therefore the running of the period of limitations, had been extended); *Schuster v. Commissioner*, 312 F.2d 311 (9th Cir. 1962), affg. 32 T.C. 998 (1959), and revg. 32 T.C. 1017 (1959) (bank held not liable for estate taxes where, after an audit, it had distributed the assets of a trust later held to be includable in the gross estate at a time when the bank would have had no remedy because of the running of the period of limitations); *Vestal v. Commissioner*, 152 F.2d 132 (D.C. Cir. 1945), revg. 4 T.C. 558 (1945) (respondent was seeking to collect a tax which had already been collected from another taxpayer who was

---

[10]Nothing in this opinion should be construed to represent any expression of our views as to whether the existence of the "loan-out" arrangement had any substantive effect on petitioner's tax liability. Indeed, the petitioner has not articulated any reasons for any such effect.

barred by the period of limitations from obtaining a refund); *Backus v. United States*, 75 Ct. Cl. 69, 59 F.2d 242 (1932) (stipulated court decision involved, see *Baker v. Commissioner*, 24 T.C. at 1024–1025); *Interstate Fire Insurance Co. v. United States*, 215 F. Supp. 586 (E.D. Tenn. 1963), affd. 339 F.2d 603 (6th Cir. 1964) (taxpayer had, at great expense, reallocated certain expenses under sec. 482 as the result of an audit and respondent later changed his mind because the reallocation produced a lesser tax); *Smale & Robinson, Inc. v. United States, supra* (involved a procedural issue as to whether an amendment to a claim for refund, to set forth a new ground after the period of limitations had expired, should be permitted).

Petitioner's motion for summary judgment will be denied and, as a consequence, pursuant to the stipulation of the parties,

*Decision will be entered under Rule 155.*

