THEODORE G. KASTER AND NORA L. KASTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kaster v. Commissioner
Docket No. 27632-84.
United States Tax Court
T.C. Memo 1985-580; 1985 Tax Ct. Memo LEXIS 50; 50 T.C.M. (CCH) 1506; T.C.M. (RIA) 85580; November 27, 1985. *50 Petitioners' residence was in Titusville, Pennsylvania. From July 28, 1981, through November 4, 1983, petitioner-husband was employed as a boilermaker on the construction of a nuclear power plant at Perry, Ohio. Petitioner-husband drove the round trip between Titusville and Perry every working day. In the notice of deficiency, respondent determined that petitionerhusband's job became indefinite at the end of July 1982 and disallowed deduction of five months worth of petitioner-husband's 1982 daily transportation expenses. By amended answer, respondent asserts that the job was indefinite before the start of 1982 and seeks to disallow the entire 1982 daily transportation expenses. Held: (1) Respondent is not equitably estopped from asserting an increase in the deficiency. (2) Petitioners have the burden of proving that petitioner-husband's job continued to be temporary after July 1982; respondent has the burden of proving that petitioner-husband's job had become indefinite before August 1982. (3) Neither side has carried its respective burden of proof. Frank J. Matune, for the petitioners. Raymond N. McCabe, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, *51 Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1982 in the amount of $600. By amendment to answer, respondent asserts an increased deficiency in the amount of $1,430, for a total deficiency in the amount of $2,030. The issues for decision are as follows: (1) Whether petitioners may deduct under section 162(a)[1] automobile expenses incurred by petitioner Theodore G. Kaster in travelling each working day between his residence and his place of employment; and (2) Whether respondent should be estopped from asserting an increased deficiency. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Theodore G. Kaster (hereinafter sometimes referred to as "Theodore") and Nora L. Kaster (hereinafter sometimes referred to as "Nora"), husband and wife, resided in Titusville, Pennsylvania. Since 1970, Theodore has been a boilermaker; *52 in particular, he is a certified welder. He has a Field Boilermaker Book out of the National Transit Division Boilermaker Union in Kansas City, Kansas (hereinafter sometimes referred to as "the National Union"), which enables him to practice his trade throughout the United States. From 1979 on, Theodore received work referrals from the Boilermaker Union, Cleveland, Ohio, Local 744 (hereinafter sometimes referred to as "Local 744"). Local 744's jurisdictional area includes approximately the northeastern quarter of Ohio and a small portion of northwestern Pennsylvania. Titusville is about the easternmost city in this area, about 120 miles east of Cleveland. Theodore's employment history from January 1, 1979, through January 18, 1985, is shown in table 1. Table 1 Employer
Beginning
End
1979
Allied Boiler
Jan. 1
Jan. 3
Cleveland, Ohio
Superior Erection Co.
Jan. 29
Jan. 31
Brecksville, Ohio
Allied Boiler
Feb. 2
Feb. 2
Cleveland, Ohio
Superior Erection Co.
Feb. 5
Feb. 24
Brecksville, Ohio
Kelley Street Erectors
Feb. 28
Mar. 1
Bedford, Ohio
Planet Construction Co.
Mar. 7
Mar. 13
Perry, Ohio
United Atkinson
Mar. 20
Mar. 21
Erie, Pennsylvania
United Atkinson
Apr. 4
Apr. 14
Erie, Pennsylvania
Planet Construction Co.
Apr. 18
Apr. 26
Ashtabula, Ohio
Kelley Steel
May 5
May 24
Bedford, Ohio
United Atkinson
June 6
June 12
Erie, Pennsylvania
Ruhlin Construction Co.
June 13
June 22
Ashtubula, Ohio
United Atkinson
June 25
Nov. 6
Erie, Pennsylvania
Planet Construction Co.
Nov. 12
Nov. 16
Perry, Ohio
United Atkinson
Nov. 18
Nov. 21
Erie, pennsylvania
Planet Construction Co.
Nov. 23
Dec. 7
Perry, Ohio
P.B.I. Industries
Dec. 13
Dec. 22
Rochester, Pennsylvania
United Atkinson
Dec. 26
Dec. 27
Erie, Pennsylvania
1980
United Atkinson
Dec. 31
Jan. 5
Erie, Pennsylvania
Superior Erection
Jan. 16
Jan. 18
Ashtabula, Ohio
United Atkinson
Jan. 18
Jan. 18
Erie, Pennsylvania
Planet Construction Co.
Jan. 21
Jan. 24
Perry, Ohio
Superior Erection Co.
Feb. 14
Feb. 23
Cleveland, Ohio
United Atkinson
Feb. 26
Mar. 5
Erie, Pennsylvania
Planet Construction
Mar. 10
Mar. 11
Eastlake, Ohio
Kelly Steel
Mar. 17
Apr. 19
Eastlake, Ohio
United Atkinson
Apr. 22
Apr. 24
Ashtabula, Ohio
Superior Erection
Apr. 28
May 7
Ashtabula, Ohio
Superior Erection
May 8
May 8
Brinksville, Ohio
Superior Erection
May 9
June 27
Perry, Ohio
United Atkinson
June 30
July 5
Niles, Ohio
Babcock-Wilcox
July 23
July 23
Niles, Ohio
United Atkinson
July 31
Oct. 24
Erie, Pennsylvania
1981
United Atkinson
Jan. 5
Jan. 5
Erie, Pennsylvania
Babcock & Wilcox
Jan. 6
Jan. 14
Niles, Ohio
Babcock & Wilcox
Jan. 27
Feb. 21
Eastlake, Ohio
United Atkinson
Feb. 21
Feb. 26
Erie, Pennsylvania
Babcock & Wilcox
Mar. 5
Mar. 16
Eastlake, Ohio
Kelly Steel
Apr. 13
May 22
Avon Lake, Ohio
United Atkinson
May 24
May 25
Erie, Pennsylvania
Nickalson & Hall
May 27
July 17
Buffalo, New York
Stevens & Painton
July 21
July 26
Cleveland, Ohio
Schneider Power Corp.
July 28
Perry, Ohio
1982 - 1983
Schneider Power Corp.
July 28, 1981
Nov. 4, 1983
Perry, Ohio
1984
Schneider Power Corp.
Jan. 23
Mar. 16
Perry, Ohio
United Atkinson
Mar. 22
Mar. 22
Erie, Pennsylvania
Frazier Company
Mar. 29
Apr. 20
Perry, Ohio
Babcock-Wilcox
May 7
May 19
Niles, Ohio
Combustion Engineering
Sept. 19
Oct. 16
Erie, Pennsylvania
Babcock & Wilcox
Oct. 16
Nov. 6
Erie, Pennsylvania
Combustion Engineering
Dec. 4
Jan. 18, 1985
Cincinnati, Ohio
*53 On or about July 28, 1981, Local 744 arranged for Theodore to be tested for welding work with Schneider Power Corporation of Pittsburgh, Pennsylvania (hereinafter sometimes referred to as "Schneider Power"), at the nuclear power plant construction project (hereinafter sometimes referred to as "the nuclear project") site at Perry, Ohio. By that time, the construction of the nuclear project had been in progress for about five years. Theodore began to work for Schneider Power at Perry on July 28, 1981, and continued in that status until he was laid off on November 4, 1983, a period of about 27 months. Each workday during that period, Theodore commuted between his Titusville residence and his Perry work site. Before this 27-month period, Theodore had worked on the nuclear project on five separate occasions for two employers for a total of 81 days in 1979 and 1980. After this 27-month period, Theodore worked on the nuclear project on two separate occasions for two employers for a total of 76 days in 1984. When he began to work for Schneider Power at Perry on July 28, 1981, Theodore had an objective expectation that he would work only two months at that job. This expectation was based *54 on his previous work record (see table 1, supra). Neither Schneider Power nor Local 744 advised Theodore of the expected duration of his job and Theodore had no idea how long the job would last. Theodore was not a member of Local 744. People such as Theodore, who had Field Boilermaker Books out of the National Union that enabled them to get work referrals from Local 744 but were not members of Local 744, were referred to as "boomers". When workers were laid off, the last hired were the first to be laid off, except that boomers were laid off before members of Local 744. However, most of the jobs at the nuclear project did not involve many members of Local 744. Boilermakers at the nuclear project generally were not notified that they were to be laid off until the day that the layoff occurred. Theodore was subject to immediate layoffs throughout the 27-month period from July 28, 1981, onward, but he was not in fact laid off until November 4, 1983. There was no seasonal pattern to the work or to the layoffs. Petitioners and their two minor children have lived in Titusville their entire lives. Petitioners pay school taxes and real estate taxes in Titusville; they are members of a *55 church in Titusville; Nora is employed as a cashier in a store in Titusville; and Nora votes in Titusville. On their 1982 income tax return, petitioners claimed a deduction of $7,178 [2] for employee business expenses. The deduction consisted of the expenses of one automobile used entirely for travelling between Titusville and Perry, for a total of 50,000 miles. [3] Petitioners' 1982 tax return was examined by revenue agent, George Lubic (hereinafter sometimes referred to as "Lubic"). In his work papers, Lubic determined the allowable expenses as follows: T/P worked in Perry, Ohio all of 1982. Temporary vs indefinite employment 1 yr rule.After 1 yr, T/P's employment determined *56 to be indefinite. Therefore, mileage allowable through the end of July 1982 (T/P working at same job site from July 28, 1981) 50,000 mi - 12 mos = 4,167 mi. per mo. Jan -- July, 1982 -- 7 mos. allowable = 29,169 miles 15,000 at 20
= 3,000.00
14,169 at 11
= 1,558.59
29,169
4,558.59
4,558.59
bus. int. & taxes
328.00
4,886.59
total allowable
Mailed T/P a copy of this w/p 12/30/83 Lubic worked in respondent's Erie, Pennsylvania, office. This office follows a "one-year rule" in making determinations as to temporary versus indefinite employment. That is, employment up to one year is considered temporary; if a single employment lasts longer than one year, then the expenses incurred after the end of one year are treated as nondedcutible "commuting" expenses. Lubic's audit report, which followed this one-year rule, was forwarded to respondent's Appeals Office in Pittsburgh, Pennsylvania. This Appeals Office followed the same one-year rule in preparing the notice of deficiency in the instant case. In the notice of deficiency, respondent allowed $4,886.59 of petitioners' claimed deduction and disallowed the remaining $2,291.41. [4] *57 By amendment to answer, respondent asserts that petitioners are not entitled to deduct any part of their claimed employee business expense deduction because all of Theodore's 1982 employment at the nuclear project was indefinite rather than temporary. * * * When Theodore began to work for Schneider Power at Perry on July 28, 1981, Theodore's employment was temporary; at some later time this employment became indefinite. OPINION Before proceeding to the substantive issue in the instant case, there are several preliminary matters to dispose of. 1. Equitable Estoppel
In the pleadings, at trial, and on brief, petitioners contend that the doctrine of equitable estoppel bars respondent from claiming an increased deficiency. Petitioners acknowledge that the doctrine of equitable estoppel will not bar respondent from correcting a mistake of law. However, on brief petitioners state that "It is the Petitioners' contention that neither *58 Revenue Agent George Lubic nor the Appellate Division committed a mistake of law, but rather knowingly and deliberately followed a predetermined position of the Internal Revenue Service in regard to said first-year employment." From this petitioners conclude that respondent is estopped. Before the trial in the instant case, the Court pointed out to counsel that (without going into all the elements that are essential to invoke the doctrine of equitable estoppel) one of the necessary elements for equitable estoppel is reliance by the party claiming estoppel, on an action by the other party, to the detriment of the claiming party. E.g., Boulez v. Commissioner,76 T.C. 209, 214-215 (1981), on appeal (CADC, Dec. 2, 1981); Hudock v. Commissioner,65 T.C. 351, 363 (1975); Schwartz v. Commissioner,40 T.C. 191, 193 (1963). Notwithstanding the fact that petitioners' attention was specifically drawn to this point before the trial, there is no evidence in the record in the instant case that petitioners relied to their detriment on any action by respondent, or by any agent or office of respondent. Indeed, in the instant case, petitioners are not relying on but are challenging the very one-year *59 rule that petitioners ask the Court to bind respondent to. We conclude that petitioners' invocation of the doctrine of equitable estoppel is totally without foundation. We hold that the doctrine of equitable estoppel does not bar respondent from claiming an increased deficiency. 2. Burden of Proof
Respondent's determinations as to matters of fact in the notice of deficiency are presumed to be correct, and petitioners have the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice & Procedure. However, respondent has the burden of proof with respect to the additional deficiency asserted in the amendment to answer. Reiff v. Commissioner,77 T.C. 1169, 1173 (1981). 3. Employee Business Expenses Petitioners maintain that the cost of Theodore's automobile expenses for his workday round trips between the nuclear project site at Perry, Ohio, and their Titusville, Pennsylvania, home are deductible under section 162(a) as ordinary and necessary expenses of Theodore's trade or business because his job at the site was temporary rather than indefinite. Respondent contends that Theodore's automobile expenses are not deductible because *60 Theodore's job was indefinite rather than temporary. We agree in part with each side. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 (sec. 262).[5] The transportation expenses ordinarily incurred in going between one's abode and one's place of business are nondeductible personal expenses under section 262. Fausner v. Commissioner,413 U.S. 838 (1973); Commissioner v. Flowers,326 U.S. 465 (1946); section 1.262-1(b)(5), Income Tax Regs.Section 162(a)[6] *61 expressly provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Generally, for transportation expenses to be deductible as expenses incurred in pursuit of business, "[t]he exigencies of business rather than the personal convenience and necessities of the traveler must be the motivating factors." Commissioner v. Flowers,326 U.S. at 474. Petitioners do not contend that Theodore's expenses are deductible under section 162(a)(2) as traveling expenses while away from home. See United States v. Correll,389 U.S. 299 (1967); Coombs v. Commissioner,608 F.2d 1269, 1276-1277 (CA9 1979), affg. in part and revg. in part 67 T.C. 426 (1976). They assert, instead, that his transportation expenses are deductible as ordinary and necessary business expenses under the "lead-in" language of section 162(a). This Court has held that as a general rule "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. E.g., Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Daly v. Commissioner,72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (CA4 1981). Since Theodore's principal place of *62 employment from July 1981 to November 1983, was Perry, Ohio, under the general rule, Theodore's "tax home" was in the vicinity of Perry. An exception has been developed to the general rule that "home" as used in section 162(a)(2) means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. Under this exception, a taxpayer's personal residence may be his or her "tax home", and the taxpayer's absence from that home may give rise to an ordinary and necessary expense of the taxpayer's trade or business, if the taxpayer's principal place of business is "temporary", rather that "indefinite". See Peurifoy v. Commissioner,358 U.S. 59, 60 (1958). This exception is relevant to section 162(a)(2) cases and not to general section 162(a) cases. Turner v. Commissioner,56 T.C. 27 (1971), vacated and remanded on respondent's motion in an unpublished order (CA2 1972). See Coombs v. Commissioner,608 F.2d at 1276 n. 3. Nevertheless, the parties herein have framed their dispute largely in terms of whether Theodore's work at the nuclear project site during 1982 was "temporary", or "indefinite", within the meaning of the Peurifoy exception. *63 A place of business is a "temporary" place of business under the principles of Peurifoy if the employment is such that "termination within a short period could be foreseen". Albert v. Commissioner,13 T.C. 129, 131 (1949). See Michaels v. Commissioner,53 T.C. 269, 273 (1969). Or, viewing the other side of the coin, an employment is for an "indefinite", "substantial", or "indeterminate" period of time if "its termination cannot be foreseen within a fixed or reasonably short period of time." Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (CA6 1971). The impermanence of an employment does not itself make the employment a temporary one. Kennedy v. Commissioner,451 F.2d 1023 (CA3 1971), affg. a Memorandum Opinion of this Court. [7] "Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner,49 T.C. 557, 562 (1968). These are questions of fact ( Peurifoy v. Commissioner,358 U.S. at 60-61), as to which petitioners have the burden of proof with regard to the amount determined *64 in the notice of deficiency ( Daly v. Commissioner,72 T.C. at 197) and respondent has the burden of proof with regard to the amount asserted in the amendment to answer.
When he was employed by Schneider Power at the nuclear project on July 28, 1981, Theodore had an objective expectation, based on his previous work record, that he would work only two months at that job. By the beginning of 1982, Theodore had been working at that job five months. By the end of July 1982, Theodore had been working at that job 12 months. Under the "last-hired, first-fired" method of determining layoffs, the longer Theodore worked at that job the less likely he was to be edged out by a fellow employee in the event of a layoff. Until he was laid off on November 3, 1983 (some 27 months after the job started and 10 months after the end of the year before the Court), Theodore was not advised by his employer or his union of the expected duration of his job and he had no idea how long the job would last. The fact that Nora secured outside employment in Titusville does not affect the deductibility of Theodore's expenses. Mitchell v. Commissioner,74 T.C. at 584; Daly v. Commissioner,72 T.C. at 196. *65 We conclude, and we have found, that Theodore's job was temporary in its inception, and that it became indefinite after some time. The question is when this change form temporary to indefinite occurred. We conclude that petitioners have failed to show that Theodore's job was still temporary after the end of July 1982. We conclude that respondent has failed to show that Theodore's job became indefinite before the end of July 1982. Decision will be entered for respondent in the amount determined in the notice of deficiency and not the amount asserted in the amendment to answer.
Footnotes
1. Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. Petitioners computed the deduction as follows: ↩
15,000 mi. at $ .20/mi. --
$3,000
35,000 mi. at $ .11/mi. --
3,850
Interest, sales tax, etc. --
328
$7,178
3. It is not clear whether petitioners claim that Theodore made 250 round trips of 200 miles each, or 200 round trips of 250 miles each. In any event, the parties agree that, if the Court agrees with petitioners on the temporary versus indefinite issue, then the amounts claimed on petitioners' tax return (both mileage and interest, sales tax, etc., expenses) are correct. ↩
4. The record is devoid of evidence as to how much of Theodore's auto expenses are attributable to the first seven months of 1982. The parties have agreed that, if the Court agrees with respondent's notice of deficiency position on the temporary versus indefinite issue, then the amounts determined in the notice of deficiency are correct.
5. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
6. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
7. T.C. Memo. 1970-58↩.